[S. F. No. 2027. In Bank.—July 18, 1900.]

MAY B. CURTIS, Respondent, v. GEORGIANA L. SCHELL, Executrix, etc., et al., Appellants.

Estates of Deceased Persons—Family Allowance for Past Years—Sale of Realty—Suppressio Veri—Action by Holder of Mortgages—Equitable Relief.—In a proceeding in equity brought by the holder of mortgages upon the interest of the widow in the estate of her deceased husband, given to secure money advanced for the support of the widow, to set aside a subsequent order granting her a family allowance (which appears to have been made entirely out of the ordinary course, in the sum of thirty thousand dollars, to cover past maintenance for nineteen years, upon an application of the widow in which the facts as to the unpaid mortgages were suppressed from the court of probate), and to set aside an order of sale of realty to pay such allowance, and for general relief, the court of equity, upon finding the facts, may direct as equitable relief that the proceeds of the sale made under the direction of the court of probate to pay the allowance, shall be applied first toward the payment and satisfaction of the mortgages, before any payment is to be made to the widow.

Id.—Rights of Transferee—Presumption of Knowledge of Law—Notice—Unusual Procedure.—One to whom the title of an heir of the estate is transferred or mortgaged as a rule takes only so much of the distributive share of such heir as remains after the purposes and objects of administration have been satisfied, and is presumed to know the law, but is not presumed to anticipate or have notice of any unusual or extraordinary proceeding taken under the form or guise of law.

Id.—Mortgagees not Chargeable with Notice of Unusual Application.—The mortgagees of the widow, who advanced money to support the family, are not chargeable with notice of the subsequent unusual application by the widow for a family allowance made to cover many past years, after the estate is ready for distribution and the children had ceased to be a charge upon the widow, and for a sale of the realty to pay such allowance.

Id.—Suppression of Material Facts—Fraud Upon Holder of Mortgages.—The failure of the widow in her application for a family allowance to notify the court of the existence and nonpayment of the mortgages for money borrowed for the support of the family was the suppression of a material fact, which operated as a fraud upon the holder of the mortgages. To give the widow, under the name of a family allowance, the proceeds of a sale of the same property on which she had borrowed money to support the family, would be to pervert the law designed for

a beneficent purpose into an instrument for the perpetration of a gross fraud.

ID.—FRAUD UPON COURT EXTRINSIC TO APPLICATION.—The suppression of such material facts was also a fraud committed upon the court in a matter extrinsic and collateral to the question examined on the application for a family allowance, against which equity will relieve.

ID.—JURISDICTION OF EQUITY TO RELIEVE FROM FRAUD IN COURT OF PROBATE.—The court of probate is of special and limited jurisdiction, and has not the requisite machinery to try a question of fraud committed therein against the rights of interested parties; and it is the peculiar province of a court of equity to grant relief from such fraud at the instance of the aggrieved parties, who have no adequate remedy in the court of probate.

ID.—FINALITY OF ORDERS OF PROBATE COURT—CONTROL IN EQUITY OF PROCEEDS OF SALE.—Where the orders of the court of probate authorizing the family allowance, and directing the sale of the real estate have become final, in the exercise of the probate jurisdiction, and there is no remedy therefor by appeal, equity will give adequate relief against the enforcement of the final judgment of the probate court which was procured by fraud of the widow, by directing a proper application of the proceeds of the sale made thereunder in payment of the mortgages made by her.

ID.—JURISDICTION OF COURT OF PROBATE—RIGHTS OF STRANGERS.—It is not within the jurisdiction of the court of probate to determine the rights of strangers to the estate, or to bring them in for the purpose of determining their rights to the proceeds of a sale made under its order for the benefit of the applicant therefor; and for the want of such jurisdiction, the equity jurisdiction is properly invoked to determine their rights to such proceeds.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a motion to vacate the judgment for the plaintiff and to enter a judgment for the defendants.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Fisher Ames, for Appellants.

The court had jurisdiction to order the family allowance, and sell the real estate to pay it. (Code Civ. Proc., secs. 1466, 1536-47; *In re Lux,* 100 Cal. 593-96, 603; *In re Welch,* 106 Cal. 427, 432, 433; *Estate of Walkerley,* 77 Cal. 642; *Sawyer v. Sawyer,* 28 Vt. 245.) If an heir conveys his interest in the

estate of his ancestor, he conveys such interest only as will remain to him after satisfying the objects of administration. (*Estate of Moore,* 57 Cal. 437, 442, 447; *Cook v. De La Guerra,* 24 Cal. 237.) Notice having been given of the application to sell the real estate to pay the allowance, the whole world, including the plaintiff, is bound by the decree. (*Williams v. Marx,* 124 Cal. 22.) Equity will not relieve, where it does not appear why remedies at law were not exhausted. (*Eldred v. White,* 102 Cal. 600; *Heller v. Dyerville Mfg. Co.,* 116 Cal. 128; *Ketchum v. Crippen,* 37 Cal. 223; *Collins v. Townsend,* 58 Cal. 614.) The fraud, if any, was intrinsic to the merits, and could not be ground for the relief. No extrinsic fraud is found. (*Pico v. Cohn,* 91 Cal. 129[1]; *United States v. Throckmorton,* 98 U. S. 61; *Bergin v. Haight,* 99 Cal. 52; *Fealey v. Fealey,* 104 Cal. 354-69[2]; *Langdon v. Blackburn,* 109 Cal. 19-27; *Hanley v. Hanley,* 114 Cal. 690.)

Gordon & Young, for Respondent.

Equity will afford relief against the enforcement of a judgment which is against conscience. (*Bergin v. Haight,* 99 Cal. 52; *Leach v. Pierce,* 93 Cal. 618; *Dunlap v. Steere,* 92 Cal. 346[3]; *Young v. Sigler,* 48 Fed. Rep. 182; *Arnowsmith v. Gleason,* 129 U. S. 86, 101; *Marshall v. Holmes,* 141 U. S. 601.) The widow is estopped by her mortgages from acting contrary thereto. (*Bates v. Bates,* 97 Mass. 392; cited in *Estate of Moore,* 57 Cal. 437, 447; *Fletcher v. Peck,* 6 Cranch, 87; *Bond v. Bond,* 7 Allen, 1.) The right to a family allowance may be waived. (*In re Welch,* 106 Cal. 427, 433; *Kearns' Appeal,* 120 Pa. St. 523.) The fraud was extrinsic and collateral to the application for a family allowance; and a court of equity has jurisdiction. (*Wickersham v. Comerford,* 96 Cal. 439; *Dunlap v. Steere, supra.*) The court had jurisdiction to grant the relief given, which was consistent with the case made. (Pomeroy on Remedies, secs. 83, 530; *Zellerbach v. Allenberg,* 99 Cal. 68; *Hurlbutt v. Spaulding,* 93 Cal. 55.)

[1] 25 Am. St. Rep. 159.

[2] 43 Am. St. Rep. 111.

[3] 27 Am. St. Rep. 143.

VAN DYKE, J.—This is a proceeding in equity to set aside an order granting a family allowance in the matter of the estate of Theodore L. Schell, deceased, and an order authorizing the sale of the real property of said estate for the purpose of paying said family allowance, and for general relief.

From the facts found the court, as a conclusion of law, held that the mortgages given to secure the indebtedness held by the plaintiff were a lien upon the interest of the defendant Georgiana L. Schell in and to the real estate of the estate of said Theodore L. Schell, and that said interest of defendant Georgiana L. Schell as an heir at law, legatee, and devisee of said Theodore L. Schell in the proceeds of the sale of said real estate should be applied to the payment and satisfaction of said borrowed money so secured by said mortgages, before the payment of said family allowance, and a decree was entered accordingly. This appeal is taken from the judgment and decree so entered, and from an order made and entered denying the motion of the defendants to set aside and vacate said judgment, and is based upon questions of law alone.

It is contended on the part of the appellants that the conclusions of law are not justified by the facts found; that there is no finding of fraud in procuring the order for a family allowance, or the order of sale to pay the same; that, failing to find fraud or to set aside the orders of the probate court, the jurisdiction of a court of equity was at an end, and the court, therefore, could not control or direct the application of the proceeds of the sale. A history of the case may be necessary to a proper understanding of the questions involved.

Theodore L. Schell died at the city and county of San Francisco, December, 1877, leaving a will by which the defendant Georgiana L. Schell and one William Hale were appointed executors. In June, 1886, Hale resigned as executor, and since that date the defendant, Georgiana L. Schell, has continued to administer the estate solely as the executrix of the said last will. By the terms of the will one-third of the estate was devised to said defendant Georgiana L. Schell, the widow of the said decedent, and the remaining two-thirds to his six children—the youngest of whom, a son, was, at the time of his death, two years old. It was provided in the will that the es-

tate should remain intact and undistributed until the youngest son should attain the age of twenty-one; and in the meantime the income of the real estate should be paid to said widow for the support and maintenance of herself and children. The youngest son became of age December, 1896. The income from the estate, after the expenses of managing the same, not being sufficient to support the family, the widow from time to time borrowed money for such purpose, mingling the said moneys so borrowed with the moneys received by her as income from the said estate, and using the same for the family support. To secure the money so borrowed she executed mortgages to the parties loaning the same of all her right, title, interest, and estate as an heir at law, devisee, and legatee in and to the real estate of said estate. The first of the mortgages so executed was to the Bank of Sonoma County in April, 1883, and was given to secure the sum of five thousand six hundred dollars, with interest. The second was executed November, 1887, to Lewis F. Curtis, to secure the payment of the sum of three thousand dollars, with interest. These two mortgages covered lands belonging to said estate in Sonoma county. In November, 1887, she executed two other mortgages to said Lewis F. Curtis, one to secure the sum of two thousand eight hundred dollars, and the other the sum of twelve hundred dollars, with interest on each at the rate of eight per cent per annum, on certain real estate belonging to said estate in the city and county of San Francisco. The mortgage held by the Bank of Sonoma County was foreclosed, and the interest covered by the same sold thereunder, which interest has become vested in the plaintiff. The other mortgages by proper assignment and transfer have also become vested in the plaintiff. Two of the children having died their interest under the will became vested in their mother, the defendant, Georgiana L. Schell. On December 14, 1896, on the petition of the said Georgiana L. Schell, the probate court of the city and county of San Francisco, in which the estate was being administered, granted an order for family allowance in the sum of one hundred and fifty dollars a month, running back to the 1st of January, 1880, aggregating, as stated in the findings, the sum of about thirty thousand dollars. Thereafter on the 23d of April, 1897, said

probate court made and entered an order to sell the real estate
of said decedent to pay said family allowance and expenses of
administration; and it is found that said order was based upon
the claim made by said executrix that there was then due the
sum of thirty-six thousand dollars for expenses of administra-
tion and for said family allowance, and there was no personal
property remaining in the hands of the said executrix where-
with to pay the same.   The value of the whole of the property
of the said estate in December of that year was appraised at
forty-four thousand three hundred and ninety-six dollars.

As above shown, the decedent directed by his will that all
the income of the estate should belong to the widow for the
purpose, among other things, of providing family support; but
said income, it appears, did not afford sufficient means for the
support of the family, and hence the widow, instead of obtain-
ing an order of court for the sale of the property of the estate
to provide for family support, borrowed money from time to
time, and used such money, as found by the court, for the
purpose of supporting the family.  This state of things con-
tinued about nineteen years, and until after the youngest of
the children had attained majority.   The mortgages to secure
the money borrowed, as already appears, were executed by
Georgiana L. Schell on her interest as devisee, legatee, and heir
at law of Theodore L. Schell, deceased.

The rule of law is as claimed by the appellant, that one to
whom the title or interest of an heir at law is transferred pend-
ing administration takes only so much of the distributive share
belonging to said heir as remains after the purposes and objects
of administration have been satisfied.   It is therefore claimed
that the mortgagee who loaned money in this case did so pre-
sumably knowing the law.   Although a party is presumed to
know the law, he is not presumed to anticipate any unusual or
extraordinary proceeding taken under the form or guise of law.
Family allowance in the administration of an estate is generally
for a temporary purpose, and the settlement of an estate and
the distribution of the same to the parties entitled thereto
generally takes place within a reasonable period.  Certainly,
no one would be bound to take notice that an application for
a family allowance would be made, as in this case, after all the

children had ceased to be a charge upon the widow, and after the estate was ready for distribution under the terms of the will, and in view of the fact that the money loaned was for the purpose of supporting the family, and presumably in view of avoiding the necessity of selling the estate to provide a family allowance. The application for family allowance was, therefore, not in the ordinary course of procedure. Upon the hearing of the petition for family allowance, although it was stated that the petitioner had borrowed money from divers persons for the support and maintenance of herself and family, it was not stated that these sums had not been paid, and it is found "the court was not informed, and at the time of making said order for said family allowance had no notice or knowledge that the said defendant, Georgiana L. Schell, had made and executed the mortgages mentioned." This was the suppression of a very material fact, which ought to have been brought to the knowledge of the court. The amount of debts, exclusive of these mortgages, and including the family allowance, as shown by the finding, was some thirty-six thousand dollars, and the value of the whole property, as also found, was forty-four thousand three hundred and ninety-six dollars. Deducting the expenses, including the family allowance, from the whole value of the property, would leave only a little over eight thousand dollars. The widow held a five-ninths interest in this, which would be less than five thousand dollars. The amount secured by mortgages which were a subsisting lien upon the interest of the petitioner with accumulated interest aggregated from twenty thousand to twenty-five thousand dollars. Therefore, if the scheme inaugurated on behalf of the petitioner should be carried out by a sale of the entire property for the payment of the said family allowance and the expenses of administration, there would be less than five thousand dollars remaining of the interest belonging to her with which to discharge the indebtedness due the plaintiff, leaving nearly twenty thousand dollars unpaid. The case here is different from that of simply buying the interest of an heir, in which, of course, the purchaser takes what is left upon distribution, after the settlement of the estate, including the charges and expenses of administration. Here, as already appears, the money was ad-

vanced for the purpose of supporting the family. It was in lieu of a family allowance, and it was loaned not to an heir merely, but to the sole executrix of the estate, who is a trustee to protect the interests of creditors. (*Bergin v. Haight*, 99 Cal. 52.)

To give the appellant, under the name of family allowance, the proceeds of a sale of the same property on which she had borrowed money to support the family, would be to pervert the law, designed for a beneficent purpose, into an instrument for the perpetration of a gross fraud. It is not to be supposed that a court possessed of all the facts and circumstances of the case would permit itself to be used for such purpose. "In general, it may be stated that in all cases where, by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere and restrain him from using the advantage which he has thus improperly gained." (Story's Equity Jurisprudence, sec. 885.) In *Insurance Co. v. Hodgson*, 7 Cranch, 332, Chief Justice Marshall laid down the rule in such cases as follows: "Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may be safely said that any fact which clearly appears to be against conscience to execute a judgment, and of which the injured party could not have availed himself at law, or of which he might have availed himself at law but was prevented by fraud or accident, unmixed with any fraud or negligence in himself or his agents, will justify an application to a court of chancery." In this case the respondent was entirely helpless as against the proceedings in the probate court initiated and carried on by the appellant. The proceeding to set aside family allowance is *ex parte*. In fact, an order for such purpose can be entered by the court of its own motion. The complaint charges and the court finds the suppression of a material fact, which matter thus suppressed and withheld was a fraud, not only against the respondent, but also a fraud committed upon the court. The fraud, however, was extrinsic and collateral to the question examined on the application for

the family allowance. The case, therefore, does not fall within the restrictions against setting aside judgments of courts obtained through intrinsic fraud, such as *United States v. Throckmorton,* 98 U. S. 61, and other cases in that line relied upon by appellants. The respondent had no adequate relief, either by appealing from the order entered in the probate court or upon motion to set it aside. The probate court does not possess the requisite machinery to try a question of fraud; that is the peculiar province of a court of equity. (*Estate of Hudson,* 63 Cal. 454; *Dean v. Superior Court,* 63 Cal. 473; *Wickersham v. Comerford,* 96 Cal. 433, 440; *Bergin v. Haight, supra.*)

*Wickersham v. Comerford, supra,* was an action to set aside an order of the probate court designating and setting apart a homestead to the defendant, the widow of Richard Comerford. Said Comerford, some time prior to his death, had entered into an agreement of separation with his wife, Sarah, under which agreement the property of said parties was divided, and she relinquished all right as wife in law or equity for support and maintenance. Upon the execution of this agreement the parties immediately separated and never again lived together. The wife with her minor son removed to Alameda county upon the property which was conveyed to her under the deed of separation, and the husband remained at their former place of residence in Sonoma county. After his death the wife took out letters of administration upon his estate, and thereafter made an application to have certain property in Sonoma county, which had been purchased by the husband with the proceeds of his separate estate, set apart to her as a homestead, which application was granted by the probate court of said county. On the application for setting apart the homestead nothing was stated in reference to the deed of separation or the division of the property thereunder. The complaint in the case charged a willful suppression of material facts, and the suggestion of a falsehood by the defendant with the intent to deceive and mislead the court to the prejudice of the creditors of the estate, and averred that such suppression and suggestion had the intended effect to the injury of the plaintiff, who was one of such creditors. This court held that that constituted fraud, and answers the contention on the part of the defendant there

that the only remedy was an appeal from the order setting apart the homestead as follows: "No doubt that order was appealable, but conceding that plaintiff's relation to the case (that of a mere creditor of the estate whose claim had not been allowed) was such as would have entitled him to appeal from that order, yet he could have obtained no adequate relief by such appeal; since neither the fraud upon which this action is grounded, nor the fact that plaintiff was a creditor, could have been brought into the record on appeal from that order. Nor did plaintiff have an adequate remedy by motion to vacate the order, even conceding that he was entitled to make such motion, and had made it within the proper time. To say nothing of the disadvantage of trying an issue of fraud on such a motion, he could not have appealed from an order denying the motion, because the order sought to be vacated, viz., the order setting apart the homestead, was itself an appealable order. (Citing a number of cases.) It will hardly be contended that a remedy for the wrongs complained of, thus restricted, is not defective and inadequate, as compared with an original equitable action adapted to a thorough investigation of the issues, and in which all errors committed by the trial court may be corrected on appeal."

*Johnson v. Waters*, 111 U. S. 640, was an original suit in the circuit court of the United States for the district of Louisiana, brought for the purpose of setting aside fraudulent and void sales made by a testamentary executor under the orders of the probate court in said state. In that case it was contended that the plaintiff was concluded by the proceedings in the probate court, which was alleged to have exclusive jurisdiction of the subject matter, and that its decision was conclusive against the world, especially against the plaintiff, who was a party to the proceeding. The supreme court of the United States in its opinion, conceding that the administration of the estate there in question properly belonged to the probate court, and that, in a general sense, the decisions of that court were conclusive and binding, especially upon parties, said: "But this is not universally true. The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact

of being a party does not estop a person from obtaining in a court of equity relief against fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais* or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceedings in another court; but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it and of any inequitable advantage which they have derived under it." (Citing a large number of cases.)

*Arrowsmith v. Gleason,* 129 U. S. 86, presented the question as to the jurisdiction of a probate court to make a sale of the lands there in controversy, and confirm sales reported by the guardian in said proceeding in probate. It was claimed there, as here, that the party complaining was bound by the judgment and orders of the probate court. The supreme court of the United States, however, says in its opinion: "But it is insisted that the circuit court of the United States, sitting in Ohio, is without jurisdiction to make such a decree as is specifically prayed for, namely, a decree setting aside and vacating the orders of the probate court of Defiance county. If by this is meant only that the circuit court cannot by its orders act directly upon the probate court, or that the circuit court cannot compel or require the probate court to set aside or vacate its own orders, the position of the defendants could not be disputed. But it does not follow that the right of Harmening, in his lifetime, or of his heirs since his death, to hold these lands, as against the plaintiff, cannot be questioned in a court of general equitable jurisdiction on the ground of fraud. If the case made by the bill is clearly established by proof, it may be assumed that some state court, of superior jurisdiction and equity powers and having before it all the parties interested, might afford the plaintiff relief of a substantial character. But, whether that be so or not, it is difficult to perceive why the circuit court is not bound to give relief according to the recognized rules of equity as administered in the courts of the United States."

To the same effect is *Bowen v. Evans*, 2 H. L. Cas. 257: "If a case of fraud be established, equity will set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivance by which it may have been attempted to protect them. It is immaterial, therefore, whether such machinery and contrivances consisted of a decree of equity, and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud."

It appears, therefore, from the foregoing cases—and many others to the same effect might be cited—that it was not necessary to first revise or set aside the orders made by the probate court. The desired purpose can be accomplished by allowing the sale ordered by that court to proceed, but to direct and control the disposition of the proceeds of such sale according to the right of the case, and this was done by the court below in its decree.

The order herein for the family allowance, and also for the sale of the real estate, were made by the superior court in the exercise of its probate jurisdiction. No appeal was taken from either of these orders, nor was any motion to modify or set them aside made in the proceeding before the probate department until after the time limited for an appeal therefrom, and the orders had thus become final, and no relief from them could be had in the probate department even if under any circumstances that department could have given relief. When it appeared that the order for family allowance had been made to reimburse the widow for moneys which she had already expended in the support of her family, and that she had obtained these moneys from the assignors of the plaintiff herein by mortgaging her interest in the estate as security for their repayment, and, without disclosing this fact, had as executrix obtained an order for the sale of the entire estate under which the purchaser would take the title discharged of such mortgages, there was presented the precise case in which a court of equity should interfere to control the enforcement of the judgment of another court by directing the application of the proceeds of that sale.

In its judgment herein the superior court does not purport to set aside or modify either of these orders, but controls Mrs. Schell in the disposition of the moneys which may be received by her upon the family allowance. Neither does the court assume to determine the amount of the charges and expenses of administration which are to be paid out of the proceeds of the sale. These matters, as well as the return of sale that may be made under the order of sale, and the hearing upon the application for its confirmation, are within the jurisdiction of the probate department, and will be determined by it. The superior court by its judgment herein in no respect interferes with the jurisdiction of the probate department in reference thereto. It takes control of the disposition of the proceeds of the sale after the confirmation and payment of those charges and expenses, and at that point intercepts the appropriation by Mrs. Schell to herself of the proceeds of the sale of her interest in the real estate which she had mortgaged to the assignors of the plaintiff by compelling the executrix to apply these proceeds, as far as may be necessary or applicable, in satisfaction of the liens which Mrs. Schell, as widow and heir of the deceased, had created upon that interest for the express purpose of obtaining the money for the reimbursement of which the order of sale was made. The judgment merely compels the executrix to make the payment of the family allowance to the assignee of the widow in accordance with contracts theretofore made by her.

The equitable relief thus sought could not be granted in the probate department of the court, for the reason that such relief is not within its probate jurisdiction. Sitting as a court of probate, the superior court exercises a special and limited jurisdiction under statutory procedure, and, although guided by principles of equity in the exercise of that jurisdiction, does not exercise its general jurisdiction in equity, but is limited to matters in probate, and, in the administration of the estates of decedents, to the objects of such administration. These objects are the temporary preservation and protection of the estate of the deceased, the satisfaction or payment of such debts and claims as are charges or liens upon it, and the distribution of the residue to those who are entitled thereto. Incidentally, the expenses incurred in the administration, and a temporary pro-

vision for the support of the family, including a homestead where proper, are to be taken from the estate. This provision, however, is in reality a distribution of a portion of the estate to those who by virtue of the statute are entitled thereto. Under its probate jurisdiction the court cannot bring before it strangers to the estate for the purpose of adjusting their claims to property held by the executrix or administrator, or for determining their rights to the proceeds of a sale derived under those for whose benefits the sale was ordered. For this want of jurisdiction in the proceeding for the administration of the estate, the equity jurisdiction of the court was properly invoked and exercised herein.

The judgment and the order denying the motion to vacate and set aside the said judgment are affirmed.

Temple, J., Harrison, J., McFarland, J., and Henshaw, J., concurred.

BEATTY, C. J., concurring.—I concur in the judgment and generally in the opinion of Justice Van Dyke. I am not, however, prepared to say that the probate court, as such, is without jurisdiction, in making an order of family allowance for the purpose of reimbursing moneys advanced for family support, to extend the benefit of its order to a third party who, at the request of the executor or administrator, has made such advances. I think, on the contrary, that, if in this instance the facts had been disclosed to the probate court at the time the order of sale was made, it would have been perfectly competent for that court to have directed payment to the plaintiff here of all sums advanced by her for the support of the family. This view does not in my opinion invalidate the conclusion that she can sustain the present action to enforce her equitable claim upon the fund which will result from the sale of the property. She had no actual notice of the proceeding in the probate court, and her failure to make her claim there was not her fault, but the fault of the defendant.