[S. F. No. 3414.   Department One.—March 15, 1904.]

## SAVINGS BANK OF SANTA ROSA, Respondent, v. GEORGIANA L. SCHELL, Executrix, etc., et al., Appellants.

JUDGMENT BY DEFAULT—SETTING ASIDE—EXCUSABLE NEGLECT.—Where upon a motion to set aside a judgment by default the facts established show excusable neglect, it was error for the court to deny the motion.

ESTATES OF DECEASED PERSONS—FAMILY ALLOWANCE—FRAUD—SALE OF REALTY—ACTION IN EQUITY BY MORTGAGEE OF HEIR—PAYMENT FROM PROCEEDS—PLEADING.—Where the executrix of an estate, who was the widow, and to whom the will gave all the income for the support of the family until the youngest child arrived of age, by fraudulent concealment of the fact that the income and borrowed money had been sufficient for the support of the family, and by falsely representing to the court that the moneys received by her had been insufficient, obtained a family allowance for thirty thousand dollars reaching back for many years, and obtained a sale of realty with intent to apply the proceeds to herself in payment of the allowance, a mortgagee of an heir who had borrowed money to help support the family may maintain an action in equity to enforce the payment out of the proceeds of sale in the hands of the executrix; and the complaint of such mortgagee, showing all of the facts and seeking such relief, states a cause of action.

Id.—Case Applied and Affirmed—Rights of Mortgagee of Heir.—
The case of *Curtis* v. *Schell*, 129 Cal. 208, is affirmed and applied
to the present action by the mortgagee of an heir. It is sufficient
that the loan was made to the heir with the expectation that the
executrix would deal honestly and fairly, and not seek to defraud
the heirs or their assigns or mortgagees by such a course as was
pursued by her.

Id.—Statute of Limitations—Constructive Trust in Proceeds of
Sale—Beginning of Injury to Mortgagee.—By reason of the
fraud of the executrix in obtaining the family allowance, and the
order of sale to pay the same, she became a constructive trustee of
the plaintiff with respect to any money she might receive out of
the proceeds of sale. The statute of limitations did not begin to run
against the plaintiff as mortgagee of the heir to enforce payment
from such proceeds from ·the date of the family allowance, nor
from the date of the order of sale, but only from the time when
the mortgagee was first injured by being deprived of his mortgage
lien by sale to the purchaser, from whom the proceeds were received.

APPEAL from a judgment of the Superior Court of So-
noma County. S. K. Dougherty, Judge.

The facts are stated in the opinion of the court.

Fisher Ames, for Appellants.

Thomas Rutledge, and James W. Oates, for Respondent.

SHAW, J.—This is an appeal by the defendants, Georgiana
L. Schell, as executrix and individually, and Frederick A.
Schell, from a judgment by default after demurrer overruled,
and after a motion to open the default had been denied.

As we think the court erred in denying the motion to set
aside the default, it is necessary first to consider that question.
The defendants' attorney, Mr. Ames, resides in San Fran-
cisco; the plaintiff's attorney, Mr. Rutledge, at Santa Rosa.
The appealing defendants filed a demurrer to the complaint,
which was overruled on January 11, 1902. On January 22d
Mr. Ames received notice of the ruling from Mr. Rutledge by
letter, which stated that Mr. Ames could have ten days' time.
to answer. On January 28th Mr. Ames wrote to Mr. Rut-
ledge inclosing a stipulation, giving him ten days' additional
time, and asking Mr. Rutledge to sign and return the same.
Not receiving any answer, on the 1st of February he en-
·deavored to telephone to Mr. Rutledge, but was informed by
the telephone company that Rutledge could not be found, but

that it would continue to search for him, and would let him
know within twenty-four hours.   The next day, not hearing
further, he inquired of the telephone company, and was in-
formed that they had been unable to find Mr. Rutledge.   On
the 3d he again endeavored to telephone Mr. Rutledge, but
again failed for the same reason.   He then wrote to Mr. Butts,
also an attorney at Santa Rosa, asking him to see Mr. Rut-
ledge and obtain an extension of time to answer.   On Febru-
ary 6th he received a postal-card from Mr. Butts, mailed on
the 5th, stating that Mr. Rutledge had been away from his
office for a week; that he had seen him about the matter, and
that Rutledge was sick and had told him to tell Mr. Ames to
take all the time he wanted to answer.   On the same day Mr.
Ames received from Rutledge the stipulation which he had
previously sent him, properly signed.   The stipulation was
in typewriting and the date was written by Mr. Ames "Janu-
ary —, 1902."   Mr. Rutledge had inserted the figure "5" in
the blank, but had not changed the word "January" to
"February."   From this information Mr. Ames believed that
Mr. Rutledge would not urge him with respect to the answer,
and, being pressed with other business, did not get his an-
swer prepared until the 1st of March, when he mailed it to
his client, who lived at Santa Rosa, to be verified.   It was
verified and returned to him on the 7th of March, and was
by him mailed to the clerk at Santa Rosa on March 11th, but
did not reach there until the 12th.   In the mean time the
default was entered on March 10th.   Motion was promptly
made to set aside the same upon affidavit showing the above
facts.   In a counter affidavit Mr. Rutledge denies that he had
any conversation whatever with Mr. Butts in regard to the
extension of time, or that he had said to him that Mr. Ames
could take all the time he wanted, or any words to that effect.
An affidavit of Mr. Butts was filed, stating that he did have
the conversation as above stated.   So far as these affidavits
are in contradiction, the action of the lower court must be
taken as conclusive, and the denial of Mr. Rutledge must be
taken as true.   The fact remains, however, that Mr. Ames had
the information from a reliable attorney, who had been re-
quested by him to make the inquiry in his behalf, informing
him that Mr. Rutledge was sick and had sent him word that
he could take all the time he wanted to answer.   He was fur-

ther informed, and correctly, that at that time Mr. Rutledge was sick and did not desire to press the. matter. It is difficult to lay down a rule which will apply to all cases of this character. The information which Mr. Ames had received was of a character and from a source which would naturally induce him to rely upon it. His belief that it was true was not under the circumstances unreasonable, and it is his belief and the reasonableness thereof that controls the question. We think, under the circumstances, that his neglect or delay —for it would not have been neglect if his belief had been well founded—was excusable, within the meaning of the statute, which requires a default to be set aside where the same was taken through the excusable neglect of the other party. For this reason the motion to open the default should have been granted, and therefore the judgment must be reversed. The appeal from the judgment presents the question of the sufficiency of the complaint and the statute of limitations which arises upon the demurrer thereto, and this makes it necessary to consider those questions.

The case is similar in most respects to that of *Curtis* v. *Schell,* 129 Cal. 208.[1] The facts, briefly stated, are as follows: Theodore L. Schell died in December, 1877. His will appointed his widow, Georgiana L. Schell, and another person, executor and executrix of his estate. The executor died in 1886, and she thereafter became, and still is, the sole executrix. The will devised one third of the estate to the widow and the remaining two thirds to his six surviving children, the youngest of whom was two years old at the death of the testator. It provided that the estate should remain intact until the youngest son should become twenty-one years of age, which would be in December, 1896, and meanwhile all incomes were to be paid to the executrix for the support of herself and the children, and expended, as she might deem proper and expedient. She mortgaged her interest in 1883, and also in 1887, to obtain money, additional to the income, with which to support the family. It was these mortgages which were under consideration in *Curtis* v. *Schell,* 129 Cal. 208.[1] On December 2, 1892, the defendant Frederick, who was a son of deceased, mortgaged to the plaintiff his interest in the estate for the sum of $3,750. The money thus pro-

[1] 79 Am. St. Rep. 107.

cured was borrowed by Frederick for the purpose of providing additional funds for the support of the family, and was received by the executrix and used by her for that purpose. Afterwards the mortgage was foreclosed and Frederick's interest sold to the plaintiff on the foreclosure sale. The income of the property and the money raised by mortgage were sufficient for the support of the family. On December 4, 1896, the executrix obtained an *ex parte* order in the matter of the estate for a family allowance of $150 per month, reaching back to 1880, amounting to $30,000. She then filed a petition for an order of sale of all the real property for the purpose of paying said allowance, which order was granted on April 27, 1897. No sale of the property took place under this order, however, until May, 1900. The money received upon the probate sale has been deposited in bank subject to the order of the court. The order for the family allowance was obtained by concealing from the court the fact that the income and borrowed money had been sufficient for the support of the family, or that any money had been borrowed at all for that purpose, and by falsely representing to the court that the moneys received by her had been insufficient. Other facts appearing in the complaint are also stated in *Curtis* v. *Schell,* 129 Cal. 208,[1] and need not be further stated here. It is clear that the scheme of the executrix, as set forth in the complaint, was to deprive the mortgagee of its security, by selling the property at probate sale free of the mortgage, and, by means of the direction to pay the family allowance, appropriate all the proceeds to her own use, and thus defraud the mortgagee of the amount due upon its mortgage.

The only point in which this case can be distinguished from that of *Curtis* v. *Schell* is, that the mortgages considered in that case were executed by the widow herself, on her individual interest in the estate, whereas this mortgage was made for the benefit of the son Frederick upon his interest. We do not see how this can make any difference in the legal effect of the transaction or divest it of its fraudulent character. Undoubtedly, if the executrix, having received this money from the child for the purpose of aiding in the general support, and having obtained this family allowance on the representation that she had supported the family out of her own means, was attempting by means of the probate sale to obtain the whole

---

[1] 79 Am. St. Rep. 107.

of the estate for herself by this fraudulent procedure, the
child would have the same rights to reach the proceeds, as the
mortgagee was held to have in *Curtis* v. *Schell*. The money
furnished by the child having been obtained by a mortgage of
the child's interest in the estate, the mortgagee, having a lien
upon the interest of the child, is substituted to the child's
rights with respect to the fraudulent transactions. By its
purchase of the property on foreclosure sale the plaintiff occu-
pies the same position with respect to the property that Fred-
erick Schell would have occupied before the sale. It is not
necessary to the plaintiff's case that it should have made the
loan to Frederick on the understanding that the money would
be repaid to it out of the family allowance, if the land should
be taken for that purpose in course of administration. If
the order had been honestly obtained, and included only the
money actually, and from reasonable necessity, furnished by
the executrix out of her own resources, other than the income
of the estate or the property sold, to support the family, or
if it had not been accompanied with the intent to defraud the
plaintiff, there would have been, in the first contingency sup-
posed, no remedy for the plaintiff, and in the second contin-
gency, no occasion to apply for relief. It is sufficient on this
point that the loan was made with the expectation on the part
of the plaintiff that the executrix would act honestly and
fairly, and not seek to defraud the heirs, their assigns or
mortgagees, by an order ostensibly to repay to her moneys
expended by her to support the family, but which would
really have the effect of giving to her absolutely the money
which plaintiff, through Frederick's intervention, had fur-
nished for family support, a result accomplished by taking to
herself the proceeds of Frederick's share on which plaintiff
had advanced the money. For these reasons, and on the au-
thority of the case of *Curtis* v. *Schell,* we think the complaint
must be held sufficient.

It is urged that the action is barred by the statute of limi-
tations because it was not begun within three years after the
order for the family allowance, nor within three years after
the order for the sale of the real estate. The judgment in the
case, however, does not purport to set aside the order for the
sale of the real estate. The plaintiff had the option to allow
that order to stand, if it chose to do so, and to seek only to

reach the proceeds of any sale in pursuance thereof. It may have been satisfied that the sale under the probate order would be to its advantage, provided it still preserved its right to reach the proceeds. Where a fraudulent scheme is attempted by which another is to be deprived of property, he is not obliged to anticipate the damage from the beginning of the transaction, and his right of action to prevent the fraud does not begin to run from the time of the occurrence of the first step in the scheme, where it consists of successive acts transpiring at different times, all of which must occur to cause injury or deprivation of property. Fraud without damage gives no right of action, and the party attempted to be defrauded may, if he chooses, await actual damage or actual invasion of some right, before attempting to prevent or set aside the fraudulent act. By reason of the fraudulent practice by which the executrix obtained the order for family allowance, the law imposes a constructive trust upon her with respect to any money she might receive thereby out of the proceeds of the sale of the land. The real estate was not sold under the probate order until the year 1900, and it was not until that time that there was any money which she could obtain from this land in satisfaction of her family allowance. Plaintiff's right was in the land, the share of Frederick therein, and its injury did not occur until some disposition was made of that share which was injurious to the right. The family allowance was not a disposition of the land; it was a mere general allowance against the assets. The mere order to sell the land did not constitute a disposition of it. It was still a matter *in fieri*, and the order might never be carried out. The plaintiff's mortgage was not actually displaced and extinguished until the land went to the purchaser at the probate sale. Then it was, and not before, that the plaintiff suffered actual loss of its right in the land, and it was upon the occurrence of that event that its right to follow the proceeds accrued. In *Hecht* v. *Slaney*, 72 Cal. 363, an order was made setting apart the land of an insolvent as a homestead. The plaintiff held a judgment lien, and he claimed that the homestead order had been procured by fraudulently misrepresenting the facts to the court. It was held that the statute began to run at the date of the order. The effect of the order, if valid, was at that instant to divest the lien of the judgment,

and thereby the plaintiff therein was then divested of his right. That decision supports our conclusion in this case, or at all events it is not contrary thereto. The precise question here involved was not presented, nor did it arise, in that case. Here the plaintiff's right of action for the substantial part of the relief it seeks did not arise until the land was sold, which was much less than three years before the action was begun. It is therefore not barred by the statute of limitations. The court did not err in overruling the demurrer.

In view of the conclusion we have reached as to the time when the right to this relief arose, we have not thought it necessary to consider the question whether or not the plaintiff, not having actual notice of the orders in question, was charged with constructive notice thereof, nor whether, if the action had been necessarily based upon the right to have those orders set aside, the statute of limitations would have been set in motion by the making of the orders, or would have remained in abeyance until the discovery of the extrinsic facts constituting the fraud. There is much force in the contention that the plaintiff would not have the right to complain of an order for family allowance for any sum really expended by the executrix of her own means for that purpose, and that consequently the gist of the fraudulent conduct consisted of the fraudulent misrepresentations to the court, that constructive notice of the making of the order did not put plaintiff on inquiry with respect to such fraud, and that its discovery was necessary to start the running of the statute. But as to this we need express no opinion.

We call attention to the fact that the decree, as entered, covered the interest of the defendant Georgiana L. Guimaraez, one of the daughters of the testator, who was not served with process, and who did not appear. This was manifestly an inadvertence. As the judgment will have to be vacated, it is unnecessary to discuss that matter further.

The order denying the motion to set aside the default is reversed, the judgment vacated, and the cause remanded, with directions to allow the appellants to file their answer to the complaint, and for further proceedings.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.