[Civ. No. 5602. Third Appellate District—January 20, 1937.]

L. C. PEDRO et al., Respondents, v. JOE N. SOARES et al., Defendants; ERNEST GONCALVES, Appellant.

602

T. B. Scott for Appellant.

Hawkins & Hawkins for Respondents.

THE COURT.—Ernest Goncalves has appealed from a money judgment which was rendered against him as holder of a trust fund for the benefit of the creditors of his codefendant Joe N. Soares, which fund was deemed to have been acquired as the proceeds of a sale of property under a foreclosure of mortgage which was alleged to have been fraudulently executed to defeat creditors. The cause was tried by the court sitting without a jury. Findings were adopted favorable to the plaintiffs. Judgment was rendered against this appellant for unpaid rental of real property, as holder of

a fund procured by fraud to defeat creditors. From that judgment this appeal was perfected.

It is asserted the evidence fails to support the findings or judgment against the appellant; that there is no evidence of a fraudulent conveyance of property from which the alleged trust fund was derived; that the pleadings do not adequately allege a fraudulent conveyance or the possession of a trust fund; that a general creditor may not maintain an action or recover a judgment against the mortgagee or grantee of an instrument executed by means of fraud or conspiracy to defeat creditors; that plaintiffs waived their right to question the validity of the alleged fraudulent mortgage, and that the action is barred by the statute of limitations and by laches.

The plaintiffs own 97 acres of grazing land in Stanislaus County which they leased to the defendants Soares April 5, 1928, for a term ending February 28, 1933, for a graduated rental of from $212.91 to $271.25 per month, $1774.63 of which rental remained unpaid. At the time of the execution of the lease, Soares owned no dairy cattle. Goncalves was then a dairyman owning a herd of 180 cows in Stanislaus County. About the time of the execution of the lease, Soares bought from Goncalves either 30 or 40 cows at $130 or $145 per head. The number of cows purchased and their price are disputed. September 28, 1932, when Soares was indebted to plaintiffs for unpaid rent, he executed a chattel mortgage to Goncalves to secure a note for $9,000, dated June 1, 1932, purporting to cover the purchase price of the cows and other money loaned to the mortgagor. October 8, 1932, Goncalves brought suit to foreclose the mortgage. Soares failed to appear or answer the complaint and judgment was rendered against him by default. The mortgaged property was sold to Frank Amaral, an innocent purchaser, for $2,150, which sum was paid to Goncalves November 16, 1932. May 18, 1933, these plaintiffs recovered judgment against Soares in another suit for delinquent rent due upon the same lease, in the sum of $1744.76, and interest, upon which judgment an execution was duly issued and returned unsatisfied. No part of that sum has been paid. Soares subsequently filed a petition in bankruptcy. On March 3, 1934, a decree was rendered, discharging him from all his debts. June 11, 1934, this action was brought against both Soares and Goncalves for the unpaid portion of the rental due in

the sum of $1774.63 and accrued interest. It is alleged in this action that Goncalves conspired with Soares to defraud the plaintiffs by the execution of a fictitious note and chattel mortgage given without consideration, which mortgage was foreclosed without contest and the proceeds of sale were paid to Goncalves who holds the fund in trust for the benefit of plaintiffs.

Upon trial of the cause the court found that the $9,000 note and mortgage were given to Goncalves with his knowledge of the fraudulent character thereof, without consideration, for the purpose of defrauding plaintiffs of their claim for rent; that the mortgage was foreclosed without contest and the property sold for $2,150, which sum was paid to Goncalves and is held by him in trust for the benefit of the plaintiffs; that plaintiffs' claim for rent was reduced to judgment, and that execution thereon was duly issued and returned unsatisfied; that Soares became insolvent and he was adjudged a bankrupt and finally discharged of all debts and obligations. Thereupon judgment was rendered against Goncalves for the sum of $1774.63 and interest from May 18, 1933. From that judgment he has appealed.

Under the circumstances of this case equity furnishes proper relief to the plaintiffs for satisfaction of their judgment from the trust fund received by the appellant, consisting of proceeds from the sale of the property fraudulently conveyed to him by Soares.

Contrary to the general rule declared in other jurisdictions (27 C. J., p. 715, sec. 561), a creditor may maintain an action in this state for the satisfaction of his claim against the fraudulent grantee of property which is conveyed to defeat creditors or against the trust fund created by the subsequent sale of that property when there is no adequate remedy at law and the transfer is void under the provisions of section 3442 of the Civil Code. (*Wright* v. *Salzberger*, 121 Cal. App. 639 [9 Pac. (2d) 869]; *Della* v. *Home Bank of Porterville*, 105 Cal. App. 106 [286 Pac. 1064]; 12 Cal. Jur., p. 1029, secs. 70–84.) When the grantee with knowledge of such fraudulent conveyance sells the property and converts the proceeds to his own use, he will be held liable to the creditor for the amount received therefrom to the extent of the creditor's claim. (*Henderson* v. *D. S. Denehy Mer. Co.*, 48 Cal. App. 41 [191 Pac. 558]; *Della* v. *Home Bank of*

*Porterville, supra;* 12 Cal. Jur., p. 1043, sec. 84.) Section 3442 of the Civil Code provides in part:

" . . . Any transfer or encumbrance of property made or given voluntarily, or without a valuable consideration, by a party while insolvent or in contemplation of insolvency, shall be fraudulent, and void as to existing creditors."

When the grantee of a fraudulent transfer of property sells it, he will become accountable to the creditors for the proceeds thereof as a trust fund for their benefit. In the Della case, *supra,* where the defendant bank had sold cattle which were found to have been fraudulently conveyed to it, the court said in that regard:

"The attempted sale must be treated as though it had never taken place and the bank must be regarded as holding the money it received from the sale of the cattle, in trust for the benefit of the creditors of Shepard. (*Allee* v. *Shay,* 92 Cal. App. 749 [268 Pac. 962].)"

In 12 California Jurisprudence, page 1043, section 84, it is said in that regard:

"Where the property alleged to have been fraudulently conveyed to the defendant is shown to have been sold by the grantee or converted to his own use the court will direct the defendant to account for the value thereof to the creditors and will enter a personal judgment against the grantee for the amount."

It is asserted there is a fatal variance between the allegations of the complaint and the findings and judgment for the reason that the complaint fails to sufficiently charge that the appellant is possessed of a trust fund created by the sale of property fraudulently mortgaged to him, and that the prayer of the complaint merely asks for a money judgment against the appellant for a specified sum. We are of the opinion there is no merit in this contention. The complaint contains specific statements of all necessary allegations constituting an unpaid valid indebtedness of $1774.63 due from Soares to the plaintiffs; the fraudulent mortgaging of the property, with the knowledge of the appellant, to defeat plaintiffs of their claim; the foreclosure of the mortgage, the sale of the property and the receipt by Goncalves of the proceeds of sale in the sum of $2,150. The facts which automatically create a trust fund are alleged. It is true the prayer merely asks for a money judgment. The language of

the prayer is not controlling. The answer denies *seriatim* each of the allegations charging Goncalves with the possession of a trust fund derived from the sale of property procured by fraud, and the cause was tried on those issues. When an answer has been filed and issues joined, regardless of the deficiency of the prayer to a complaint, the court may grant plaintiff any relief consistent with the issues raised by the pleadings. (*Nathan* v. *Dierssen,* 164 Cal. 607, 611 [130 Pac. 12]; 21 Cal. Jur., p. 66, sec. 41.) The findings and judgment are therefore not at variance with the pleadings in this case.

We are also of the opinion the findings and judgment are adequately supported by the evidence in spite of the fact that there is a serious conflict upon nearly all of the material issues regarding the alleged fraudulent conveyance. Section 3442 of the Civil Code provides that the voluntary transfer or encumbrance of property without valuable consideration is deemed to be fraudulent and void as against existing creditors. There is substantial evidence that about the time plaintiffs leased their 97-acre grazing land to Soares in April, 1928, he bought from Goncalves 30 head of dairy cows at $130 apiece, for which he then paid cash. Mr. Amaral testified in that regard that Goncalves told him ''that he had sold 30 cows at $130 a head to Joe N. Soares, cash''. Joe Aguiar also testified that Soares told him, shortly after the plaintiffs' ranch was leased, that he bought 30 cows from Goncalves for $130 each, paying cash therefor. The plaintiff, L. C. Pedro, testified that Soares told him, ''I just bought 30 head of cows from Ernest Goncalves, . . . and I pay him $130 a head for them''. There is other evidence to the same effect. It also appears the bank account of Goncalves was credited with the sum of $3,900 on April 20, 1928, which is about the date the cattle were purchased. That sum is also the exact amount which would be derived from the sale of 30 cows at $130 apiece. It is true that Goncalves claimed that money was paid to him by his son-in-law in another transaction. The son-in-law was present in court but was not called to corroborate the statement or to explain the transaction. Both Goncalves and Soares testified that the latter purchased 40 cows at $145 a head, which would aggregate the sum of $5,800, no part of which was paid, and that the note and mortgage were executed four years later to secure the pur-

chase price of the cattle and to secure subsequent loans of $2,000 at one time, and of $600 and $700 at later dates, with accrued interest on the entire indebtedness, neither principal nor interest having been paid. It also appears that at the same time Soares was borrowing money from Goncalves he claims to have loaned one Machado the sum of $2,400.

In determining whether the note and mortgage were executed without consideration to defraud creditors, the court was justified in taking into consideration the pretended numerous loans, the alleged purposes of the loans and the surrounding circumstances, including the delay of nearly four years from the time of the original loan until the mortgage was executed, the fact that no principal or interest was paid during that entire period and the speedy foreclosure of the mortgage without contest on the part of Soares. The conflict of evidence regarding the number and price of the cattle is also significant.

We are satisfied there is sufficient evidence to support the theory that the note and mortgage were fraudulently executed without consideration for the purpose of defrauding creditors.

█ The respondents did not waive their right to maintain this suit based on the fraudulent transfer of property to defeat creditors, by dismissing their opposition to a third party claim which was filed by Goncalves in a former action pending between these plaintiffs and Soares for unpaid rent in the fall of 1932. It appears that suit was brought to recover $560.10 unpaid rent due under the provisions of the same lease which is involved in this case. A writ of attachment was issued in that case and levied upon certain hay which was included in the chattel mortgage involved in this proceeding. Goncalves filed a third party claim and took possession of the hay. The plaintiffs first opposed that claim, but the opposition was later dismissed without a hearing. The appellant claims that dismissal constitutes a waiver on the part of the plaintiffs of this action for fraudulent conveyance of property including the hay in question. We think not. That suit did not involve the title to hay or any other property. It was a simple suit in *assumpsit*. The third party claim was merely incidental to the issues in that case. It does not appear that the plaintiffs then knew that the $9,000 note and mortgage had been fraudulently executed

without consideration to defeat creditors, or that Soares was then a bankrupt and unable to pay the rent. The dismissal of their opposition to the third party claim was therefore not a waiver of their right to maintain this action.

The appellant suggests that the present action does not lie for the reason that respondents had three other remedies, which are: (1) To have sold the attached hay in the former suit, (2) to have brought an action to set aside the mortgage on the ground of fraud, and (3) to have presented their claim for rent to the trustee of the bankrupt estate of Soares. It does not appear that any one of these proposed proceedings would have been an adequate remedy. There is no doubt the respondents had the right to resort to this action to enforce the application of trust funds procured by the sale of property fraudulently transferred to defeat creditors. They properly proceeded to reduce their claim to a judgment and to exhaust their remedy at law, before this action was commenced. Regarding the proper form of action under circumstances similar to those which are presented in the present case, it is said in 12 California Jurisprudence, page 1029, section 70:

"A creditor has generally an election of one of three remedies by which he may reach property fraudulently transferred; (1) *having obtained a judgment* upon his claim he may levy upon the property fraudulently conveyed, since the conveyance, so far as he is concerned, leaves the legal title and ownership in the fraudulent grantor; or, (2) he may bring an action in equity to set aside the fraudulent conveyance and subject the property to the satisfaction of his judgment lien, in which case the action is not one on the judgment but is an equitable one for relief against the obstruction caused by the fraudulent transfer which hinders him in satisfying his claim by the ordinary process of law; or (3) he may bring an action in the nature of a creditor's bill for the purpose of subjecting to the payment of his judgment, the money or property transferred or concealed in fraud of his rights."

The last-mentioned method of procedure was resorted to by the respondents in this case. That method appears to have the entire approval of the California authorities. It is true that the respondents might have brought an action to set aside the note and mortgage as fraudulent. But it does not appear that they were then aware of the fact that the trans-

fer was fraudulent. That fact was not discovered until after the foreclosure of the mortgage and the sale of the property. Their claim had not been reduced to a judgment until after that sale occurred. At least they had the option to proceed in this manner under the circumstances of this case.

This action which is based on a fraudulent transfer of property to defeat creditors, is not barred by the statute of limitations. The complaint alleges that the fraudulent mortgage was executed June 1, 1932. The property was sold on mortgage foreclosure November 16, 1932. Plaintiffs' claim for unpaid rent was not reduced to judgment until May 18, 1933. This suit was commenced June 11, 1934, within three years of the time of the fraudulent transfer of property. We are of the opinion section 338 of the Code of Civil Procedure governs the time within which an action of this nature must be commenced. Subdivision 4 of that section provides that an action must be commenced within three years when it consists of:

"An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

The plaintiffs were not actually damaged by the fraudulent mortgaging of the property, until that property was sold on mortgage foreclosure November 16, 1932. It is said in *Savings Bank of Santa Rosa* v. *Schell*, 142 Cal. 505, 511 [76 Pac. 250, 253], that:

"Fraud without damage gives no right of action, and the party attempted to be defrauded may, if he chooses, await actual damage or actual invasion of some right, before attempting to prevent or set aside the fraudulent act."

The statute did not begin to run under the circumstances of this case until the property was sold under the terms of the fraudulent mortgage and the proceeds of sale were paid to Goncalves. This is not an action to set aside a fraudulent conveyance. It is a suit to compel the application of trust funds received as the proceeds of a fraudulent conveyance to the payment of an existing creditor's claim which would otherwise be defeated by the fraud. As a matter of fact, this suit could not be maintained until the claim was first reduced to a judgment which could not be satisfied by Soares. It, therefore, became necessary to take out an execution and

attempt to levy it before the plaintiffs could establish the fact that Soares was insolvent and could not pay the debt. Under no theory suggested by appellant may we assume this action was barred by the provisions of the statute of limitations. It was brought within three years of the date of the execution of the fraudulent mortgage.

Moreover, the defense of the bar by virtue of the statute of limitations is a personal privilege which must be affirmatively asserted either by demurrer or answer or it will be deemed to have been waived. (*Laffoon* v. *Collins,* 212 Cal. 750, 758 [300 Pac. 808] ; *Brownrigg* v. *deFrees,* 196 Cal. 534, 541 [238 Pac. 714] ; 16 Cal. Jur., p. 603, sec. 199.) The only reference to a defense on the ground of the limitation of time within which the action should have been commenced is found in paragraph III of the demurrer as follows:

''The said action is barred by subdivision 3 of section 340 of the Code of Civil Procedure of the State of California.''

Section 340, subdivision 3, has no application to this cause of action, and does not prescribe the limitation of time within which such a case must be brought.

The defense to the action on the ground of the lapse of time within which it must be brought was waived.

Nor was the action barred by laches. The defense of laches was not pleaded. While it is true that other jurisdictions require the defense of laches to be raised by appropriate pleadings (18 Standard Ency. of Proc. 434, sec. IV A), it has been held in California that the defense of laches is not waived by failure to plead it. (*Suhr* v. *Lauterbach,* 164 Cal. 591 [130 Pac. 2].) This action was promptly brought after the return of the execution unsatisfied in the former suit establishing the claim by judgment. Unless there are circumstances which render a delay in commencing an action of this nature injurious to the defendant on that account, the suit will not ordinarily be deemed to have been barred by laches where it is brought within the time prescribed by the statute of limitations applicable to a suit of that nature. (*Vickrey* v. *Maier,* 164 Cal. 384 [129 Pac. 273].) Moreover, a defendant is estopped from urging the defense of laches where the plaintiff's delay in commencing the suit is caused by his acts or fraudulent conduct. (*Miller* v. *Ash,* 156 Cal. 544 [105 Pac. 600] ; 10 Cal. Jur., p. 535, sec. 76.) In the present case the sale of the property to an innocent purchaser

under the fraudulent mortgage required the plaintiffs to reduce their claim to a judgment before they could resort to the trust fund thus created to satisfy the judgment. There was no unnecessary delay in bringing the suit, or in prosecuting it to judgment. The appellant's participation in the fraudulent transaction bars him from now urging the defense of laches. It is said in 10 California Jurisprudence, page 531, section 68:

"A person is in equity guilty of laches only where he has, by his conduct or negligence and delay, induced or suffered another to do or abstain from something whereby he might be injured should he be allowed to enforce his rights. It seems, however, that mere expenditure of money or effort on the part of the defendant is not enough to show such prejudice as will support a plea of laches. It must also appear that it will be inequitable to enforce the plaintiff's claim."

It does not appear that the delay in this case in commencing the action has resulted in detriment to the appellant or that it is inequitable as to him. There is no merit in the defense of laches.

"The application to file certified copies of pleadings in the Justice's Court of Newman Township is denied. It does not appear these copies were used as evidence in the trial court. This court has no authority to permit the introduction of evidence on appeal which was not adduced at the trial of the case. Moreover, no motion was actually made in this court to introduce these certified copies of pleadings."

The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 19, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 18, 1937.