[Civ. No. 24129. Second Dist., Div. One. Apr. 18, 1960.]

R. E. ALLEN, as Receiver, etc., Appellant v. GEORGE S. RAMSAY, Respondent.

[Civ. No. 24130. Second Dist., Div. One. Apr. 18, 1960.]

R. E. ALLEN, as Receiver, etc., Appellant, v. WILLABELLE PALMER, Respondent.

Kenny & Morris for Appellant.

Glen A. Duke and Nathan Newby, Jr., for Respondents.

FOURT, J.—These are appeals from judgments entered after the sustaining of demurrers to complaints (in the Ramsay case the third amended complaint) without leave to amend.

The appeals have been consolidated upon stipulation of the parties and the order of this court. The cases involve identical questions of fact and law. The Ramsay complaint was filed March 16, 1959. The Palmer complaint was filed March 13, 1959. The complaints alleged as follows:

"II

"On May 21, 1956 plaintiff was appointed receiver of trust funds of Cole's Check Service, Inc., hereinafter referred to as 'Cole's'. Having been thus appointed, plaintiff duly qualified by taking the oath and posting the bond required by law. Said appointment and qualification were had in a matter entitled 'People of the State of California, W. H. Stephenson, Commissioner of Corporations of the State of California, Plaintiffs vs Cole's Check Service, Inc., a domestic corporation; H. Rawland Cole, also known as H. R. Cole; John Grove, also known as J. Nelson Grove; and Nathan Newby, Defendants' (Los Angeles Superior Court number 656412). Thereafter, on August 7, 1958, pursuant to a hearing on an order to show cause, plaintiff was appointed receiver of all the assets and trust funds of Cole's and furthermore directed by said order of August 7, 1958 to file suit on,

" 'The claim against George S. Ramsay for moneys received from the bankrupt in the amount of approximately $30,000.00 on or about March 14, 1955.' "

That up to and including March 29, 1955, Cole's was engaged in the business of selling checks and money orders to the public and accepting from the public funds for checks and money orders issued by it. On April 14, 1956, Cole's filed a petition of voluntary bankruptcy and on said date was adjudged bankrupt.

". . . Thereafter, on April 9, 1958 in the aforesaid bankruptcy proceedings the Honorable John E. Bergener, Referee

in Bank*rtupcy* signed an 'Order Approving First and Final Report and Account of Trustee'. Said order provided among other things the following:

" 'It is further ordered and decreed that the aforesaid causes of action shall include each of the following enumerated matters and the same are hereby transferred to said R. E. Allen, as such receiver for such trust assets to wit:

" . . . . . . . . . . . . .

" 'The claim against George S. Ramsay for moneys received from the bankrupt in the amount of approximately $30,000.00 on or about March 14, 1955.'

"Thereafter, on or about July 25, 1958 the Honorable John E. Bergener signed and there was filed in said bankruptcy proceeding an 'Order Approving Account, Discharging Trustee and Closing Estate.' "

It is further alleged on information and belief that on or about March 14, 1955, John Grove, also known as J. Nelson Grove and H. Rawland Cole, also known as H. R. Cole, were respectively the president and vice-president of Cole's, and were in complete control of the affairs and activities of Cole's owning more than 50 per cent of its outstanding shares and being its officers and directors; that on or about March 14, 1955 Cole and/or Grove, as officers of Cole's, drew checks on Cole's bank account in the Bank of Los Angeles, which said bank account consisted entirely of trust funds as defined by section 12300.3 of the Financial Code of the State of California. That the checks were made payable to the defendants and respondents and were delivered to them and cashed by them and as a result the trust funds of Cole's were depleted in the total amount of $40,000, all in violation of section 12300.3 of the said Financial Code.

It is further alleged on information and belief that the defendants and respondents were purportedly general creditors of Cole's having prior to March 14, 1955, loaned money to Cole's, but that in fact the loans had been personal in nature having been made for "the sole and individual benefit of the said Grove and Cole and that the note evidencing said loan had been individually endorsed and payment guaranteed by said Grove and Cole"; that the "repayment of March 14, 1955 by check as aforesaid was part of a common transaction between the defendants herein and Grove and Cole whereby the trust funds of Cole's were depleted at the expense of the various trustors and obligors from whom Cole's had accepted funds for the purpose of writing checks and paying

bills while the said personal obligations of Grove and Cole were thus extinguished; that on March 14, 1955, the defendants and each of them had full knowledge of the fact that the only assets which Cole's then had were trust assets as defined by Section 12300.3 of the Financial Code; that the repayment to defendant Ramsay by check as aforesaid constituted an illegal use of trust funds under Section 12300.3 of the Financial Code."

It is further alleged on information and belief that on the said date of March 14, 1955, the liability of Cole's for the money orders issued and checks sold exceeded the balances of cash on hand by at least the amounts of the checks to defendants and respondents.

It was then alleged:

"VIII

"Plaintiff first had notice that the repayment by check as aforesaid to the defendant George S. Ramsay was made solely from trust funds as aforesaid on or about February 27, 1957 from an independent audit of the books and records of Cole's by a certified public accountant employed by Leslie S. Bowden, trustee in bankruptcy of Cole's."

The prayers in the respective complaints are that the repayments to Palmer and Ramsay be declared to be unlawful and in violation of 12300.3 of the Financial Code and in fraud of the trustors and obligors of the corporation and that the defendant be declared to be involuntary trustees of the sums so unlawfully paid to them and that they be compelled to account for the moneys so paid to them, or in the alternative for judgments against them in the respective amounts.

As heretofore indicated, general demurrers were interposed as to both the complaints and sustained without leave to amend when counsel for the plaintiff stipulated that the complaints could not be further amended. Judgments in favor of both defendants were signed and entered.

The appellants state that:

"When a corporation is dominated by officers and directors who misappropriated its funds for their own benefit and a receiver has been subsequently appointed at the request of the state corporation commissioner the statute of limitations should not run against the receiver's claim to recover the funds from those holding them until the date of the receiver's appointment."

Analyzing the complaint we find that the action is in effect one to recover money upon the grounds that the funds paid to

the defendants were trust funds. It is alleged that the loans were made to the corporation and that the repayments were made to satisfy the preexisting indebtedness of Cole's to the defendants, which Cole and Grove, the directors and majority stockholders of Cole's had guaranteed. There are, it is true, some allegations to the effect that the loans were made for the benefit of Grove and Cole and that the notes had been individually endorsed by Grove and Cole. There is no allegation however that the defendants had any knowledge of the ''personal nature'' of the loans or that such in anywise affected the obligation of the corporation to the defendants. The individual endorsement and guarantee by Grove and Cole would seem to lend substance to the theory that the corporation was the primary debtor. Plaintiff then follows with the allegation in effect that such loans were part of a common transaction between the defendants and Grove and Cole to repay the loans with trust funds at the expense of the various trustors and obligors from whom Cole's had accepted funds for the purposes of paying bills or writing checks and that the defendants had full knowledge of the fact that all of Cole's assets were of trust character and thus were charged with knowledge of the fact that the repayments constituted an illegal use of the trust funds. This would appear to be an effort to state a cause of action in fraud for knowingly accepting trust funds which were in the hands of the trustee in satisfaction of the obligations of the trustee to the defendants.

Section 12300.3 of the Financial Code (Check Sellers and Cashers Law) reads in part as follows:

''All money, checks, drafts, and money orders received by a licensee in the business of selling checks, or of receiving money as agent of an obligor for the purpose of paying bills, invoices, or accounts of such obligor, . . . constitute trust funds owned by and belonging to the persons from whom they were received and shall be separated not later than the end of each third business day and thereafter kept separate, distinct, and apart at all times. . . . All such trust funds shall be deposited in a bank or banks in an account or accounts in the name of the licensee designated 'trust account.' . . .''

There is no allegation that the bank account from which the funds were drawn and paid was a trust fund account as required by the code section just quoted in part. There is no direct allegation that the funds paid to the defendants were the funds deposited by then existing holders of unpaid checks,

money orders or bills nor are such holders referred to, excepting in general terms as heretofore set out.

In Witkin, California Procedure, volume II, page 1327, it is stated in part:

"Fraud actions have been classed as 'disfavored,' and are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged. (2) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings (see *supra*, § 209) will not ordinarily be involved to sustain a pleading defective in any material respect. (See *Scafidi* v. *West. Loan & Bldg. Co.* (1946), 72 Cal. App.2d 550, 558, 165 P.2d 260 [quoting C.J.S.: 'It is essential that the facts and circumstances which constitute the fraud should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called on to answer, and to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least, for the charge of fraud'] ; *Woodson* v. *Winchester* (1911), 16 C.A. 472, 117 P. 565; *Mason* v. *Drug, Inc.* (1939), 31 C.A.2d 697, 703, 88 P.2d 929; *Bacon* v. *Soule* (1912), 19 C.A. 428, 438, 126 P. 384; *cf.* Fed. Rule 9(b) ['In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity'] ; 1 B. & H. 541; Clark, p. 541, but *cf.* § 350, *infra.*)"

In 75 Corpus Juris Secundum, 1024, section 351, under the title "Stating cause of action (by receiver) it is set forth:

"Since a receiver is not clothed with any right to maintain an action which the parties or estate represented could not maintain, he must show cause of action existing in such parties or estate, enforceable by him, in his capacity as receiver, in their behalf."

In this case the plaintiff has not identified the account from which the payments were made by any particular allegation but rather he has made a broad statement of a legal conclusion to the effect that the bank account consisted of trust funds without stating any of the facts upon which he

bases such a conclusion. The plaintiff does not say unequivocally that he represents anyone who has an interest in the particular funds, or under what circumstances his interests, if any, arose, or when it arose or that the funds paid to the defendants came from the present trustors and obligors of Cole's.

A receiver ordinarily takes any property or any cause of action subject to any defenses that the defendant might have subject to certain exceptions.

The complaint sets forth as heretofore quoted that plaintiff was appointed a receiver in action Number 656412 and the file thereof, pursuant to stipulation made at the time of oral argument, is now a part of the record in this case. It is set forth "that plaintiff was appointed receiver of all the assets and trust funds of Cole's and furthermore directed— to file suit." With reference to the bankruptcy proceedings the claims against the defendants for moneys received from Cole's were transferred to the plaintiff. The latter two references to the receiver are the only direct allegations as to the representative capacity of the plaintiff. There is the indirect statement that "the trust funds were depleted at the expense of the various trustors and obligors from whom Cole's had accepted funds. . . ."

In the action Number 656412 *Commissioner et al.* v. *Cole's et al.*, it is apparent that the commissioner brought the action under his authority as set forth in the Check Sellers and Cashers Law. On the face of it it would seem that the receiver there appointed was the receiver of the assets of and trust funds of Cole's. In other words, the receiver stepped into the shoes of the corporation. The corporation being *in pari delicto* with the defendants would probably, prior to the receivership, have been unable to sustain any action against the defendants and it is difficult to see how the receiver can be in any better position than the corporation was.

In 42 California Jurisprudence 2d at page 385 it is stated in part:

"90. ——Extent of Right to Sue; Defenses to Actions. ——A receiver may ordinarily assert no rights the owner of the property in receivership could not have asserted, except in cases especially provided for by statute or the rules of equity giving a receiver authority to sue in the interest of creditors. . . .

"Any action brought by a receiver is subject to the same

defenses that might have been pleaded against the receivership defendant had no receiver been appointed.''

To prevail in this case it would seem that the receiver would have to represent the trustors and obligors of Cole's who gave their money to Cole's in purchase of checks and who gave their money to Cole's to pay their bills and whose money was paid to the defendants. There is no direct allegation that he, the receiver, represents any such persons. The trustors and obligors referred to in the complaint are spoken of in broad general terms and there is no statement as to when they became such with reference to the repayments to the defendants. It is difficult to see how an action can be maintained in favor of an alleged beneficiary of a trust fund, unless that beneficiary has an interest in the fund in question. There is no allegation in the complaint with reference to this matter. In other words it is not clear from a reading of the complaint whom the receiver represents in this particular case.

The appellant concedes that the three year statute of limitations (Code Civ. Proc., § 338, subd. 4) is applicable to this case. That section reads in part as follows:

''An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.''

It appears on the face of the complaint that the occurrence complained of and which is the basis of this action occurred more than three years prior to the filing of the complaint and unless the receiver can place those whom he represents within an exception to the general rule then the action is barred.

In 31 California Jurisprudence 2d at page 569, section 139, it is set forth in part as follows:

''As a general rule, no repudiation of an involuntary trust is necessary to set the statute of limitations in motion. The statute begins to run at once on the commission of the acts that give rise to the trust that is, at the moment the law creates the trust. However, though it is the general rule that on the transfer of trust propery [sic] to a stranger to the trust the transferee becomes an involuntary trustee and the statute of limitations ordinarily commences to run from the date of the transfer, there is a recognized exception to the general rule to the effect that in some circumstances the statute commences to run not at the time of the wrongful act by which the trust was created but only at, a subsequent date when the plaintiff

becomes cognizant of the facts. Thus, though ordinarily, in an action to establish a constructive trust, the statute runs from the date when the trust is created, if the action is deemed to be one for wrongful conversion of a trust fund the statute runs either from the actual date of the conversion of the money or the date when the claimant acquired actual or constructive knowledge of the conversion."

In Witkin, California Procedure, volume II, at page 1465, it is stated in part as follows:

"The injured party may bring an action based on fraud or mistake more than 3 years after the transaction *if he shows that he did not discover the facts, and could not with reasonable diligence have discovered them, prior to 3 years before the suit.* (See *Actions,* § 143 et seq.) (Emphasis added.)

"*The showing of excuse for late filing must be made in the complaint.* Formal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that the plaintiff could not reasonably have made an earlier discovery, are useless. The complaint must set forth specifically (1) *the facts of the time and manner of discovery; and* (2) *the circumstances which excuse the failure to have made an earlier discovery.* (Emphasis added.) (See, holding the pleading defective, *Consol. R. & P. Co.* v. *Scarborough* (1932), 216 C. 698, 16 P.2d 268; *Jackson* v. *Master Holding Corp.* (1940), 16 C.2d 824, 108 P.2d 673; *Vertex Inv. Co.* v. *Schwabacher* (1943), 57 C.A.2d 406, 415, 134 P.2d 891; *Nighbert* v. *First Nat. Bank* (1938), 26 Cal.App.2d 624, 79 P.2d 1105; *Crabbe* v. *White* (1952), 113 C.A.2d 356, 248 P.2d 193; *Bradbury* v. *Higginson* (1914), 167 C. 553, 558, 140 P. 254 (reformation for mistake); *Phelps* v. *Grady* (1914), 168 C. 73, 77, 141 P. 926 [rescission]; *Davis* v. *Hibernia S. & L. Soc.* (1913), 21 C.A. 444, 447, 132 P. 462 [equitable relief against judgment].)"

And, at page 1466 of the same volume of Witkin under the title of "estoppel" it is stated:

"Where the complaint shows that the statute has run, and no ordinary ground for suspension or tolling exists, the plaintiff may sustain his action by alleging facts creating an estoppel to set up the defense, e.g., fraudulent concealment of the cause of action or inducement not to sue. (See *Actions,* § 170 et seq.; and see, for illustrations of pleading held sufficient, *Pashley* v. *Pac. Elec. Ry. Co.* (1944), 25 C.2d 226, 228, 153 P.2d 325, *Actions,* § 174; *Bowman* v. *McPheeters* (1947),

77 C.A.2d 795, 797, 799, 176 P.2d 745 [allegations of knowledge of defendant, ignorance of plaintiff, misrepresentation and non-disclosure, intent to deceive, justifiable reliance and no negligence in late discovery]; *Schaefer* v. *Kerber* (1951), 105 C.A.2d 645, 234 P.2d 109; *Carruth* v. *Fritch* (1950), 36 C.2d 426, 224 P.2d 702; 9 Hillyer 9282, 9284; *Actions,* § 171.)

"In *Bank of America* v. *Williams* (1948), 89 C.A.2d 21, 25, 200 P.2d 151, the court, after a careful analysis, held the complaint insufficient: 'The existence of such fraud must be alleged clearly and unequivocally, and must not rest upon inferences. In addition, the plaintiff must allege when the fraudulent concealment was discovered, the circumstances of discovery, and must allege facts showing that plaintiff was not at fault for failing to discover the fraud sooner.' (See also, holding complaint defective, *Scafidi* v. *Western L. & B. Co.* (1946), 72 C.A.2d 550, 165 P.2d 260; *Fleishbein* v. *Western Auto S. Agency* (1937), 19 C.A.2d 424, 65 P.2d 928.)"

In *Lady Washington Consol. Co.* v. *Wood,* 113 Cal. 482, at page 486 [45 P. 809] it is set forth that:

"The right of a plaintiff to invoke the aid of a court of equity for relief against fraud, after the expiration of three years from the time when the fraud was committed is an exception to the general statute on that subject, and cannot be asserted unless the plaintiff brings himself within the terms of the exception. It must appear that he did not discover the facts constituting the fraud until within three years prior to commencing the action. This is an element of the plaintiff's right of action, and must be affirmatively pleaded by him in order to authorize the court to entertain his complaint. 'Discovery' and 'knowledge' are not convertible terms, and whether there has been a 'discovery' of the facts 'constituting the fraud,' within the meaning of the statute of limitations, is a question of law to be determined by the court from the facts pleaded. As in the case of any other legal conclusion, it is not sufficient to make a mere averment thereof, but the facts from which the conclusion follows must themselves be pleaded. It is not enough that the plaintiff merely avers that he was ignorant of the facts at the time of their occurrence and has not been informed of them until within the three years. He must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them—as that they were done in secret or were kept concealed; and he must also show the times and circum-

stances under which the facts constituting the fraud were brought to his knowledge, so that the court may determine whether the discovery of these facts was within the time alleged; and, as the means of knowledge were equivalent to knowledge, if it appears that the plaintiff had notice or information of circumstances which would put him on any inquiry which, if followed, would lead to knowledge, or that the facts were presumptively within his knowledge, he will be deemed to have had actual knowledge of these facts. (See also, *Edgar Rice Burroughs, Inc.* v. *Commodore Productions & Artists, Inc.* (1959), 167 Cal.App.2d 463, 475 [334 P.2d 922].)''

 The receiver in this case in effect pleads that Cole's was doing business in March, 1955, and that on March 29, 1955, Cole's license was suspended in proceedings had before the Corporations Commissioner. Some 14 months later, he was appointed the receiver and directed to file a suit. There is nothing stated about any matters within that 14-month period with respect to which he must plead to avoid the running of the statute of limitations. There are no facts alleged with reference to what was done by way of investigating upon the part of the parties he now represents. The Corporations Commissioner suspended the license of Cole's for reasons which must be easily ascertainable. The commissioner must have been familiar with the affairs of Cole's; otherwise an action would not have been instituted against that firm. It is reasonable to suppose that from the time of the commencement of the action by the commissioner to the date of the appointment of the receiver, that the commissioner thoroughly investigated Cole's and its trust accounts.

In the complaint of the commissioner in the first instance it is alleged that he:

''. . . undertook an examination and investigation of the business, accounts, and records of said Cole's Check Service, Inc., in accordance with the authority conferred upon him by Section 12305 of the Financial Code,'' and that he: ''. . . undertook a further examination and investigation of the operations of said Cole's Check Service, Inc. . . . that the inspection revealed that no deposits had been made in a trust account by Cole's Check Service, Inc., as required by Section 12300.3 of the Financial Code.''

In the complaint in this case the plaintiff alleged that he first had knowledge that the ''repayment by check'' to defendant was made solely from trust funds on or about Febru-

ary 27, 1957, from an audit of Cole's books by an auditor employed by the trustee in bankruptcy. But the time when the receiver made the discovery himself is not particularly important in this case. The time when the party or parties for whose benefit he brought the action first made the discovery is the important date and it is the only date which is proper in the establishment or nonestablishment of a cause of action. There is nothing in the complaint as to why the plaintiff's principals failed to discover the claimed fraud. As heretofore set forth, the receiver takes his cause of action subject to all of the defenses that can be raised against his assignor with the exceptions heretofore noted.

■ ■ A receiver occupies no better position than that which was occupied by the person or party for whom he acts and the receiver takes the property and the rights of one for whom he was appointed in the same condition and subject to the same equities as existed before his appointment and any defense good against the original party is good against the receiver. (*Downey* v. *Humphreys,* 102 Cal.App.2d 323 [227 P.2d 484]; *Estate of Smith,* 123 Cal.App.2d 844 [268 P.2d 53].)

Appellant in his reply brief places considerable reliance upon the case of *Victor Oil Co.* v. *Drum,* 184 Cal. 226 [193 P. 243]. In that case there was a trial upon the merits. In the case before us no evidence was introduced at the trial to cure the defects that might appear upon the face of the pleading.

Appellant quotes from page 236 of the *Victor Oil Co.* case wherein the words of the Justices in *Gluckstein* v. *Barnes,* House of Lords in L.R.App.Cas. [1900] 240 are cited with approval. The appellant failed to mention that at pages 241 and 242 of the opinion the court also said:

"As to the point of pleading, the rule laid down in *Lady Washington etc. Co.* v. *Wood,* is that where an action for relief on the ground of fraud is brought after the expiration of the statutory period of three years, the complaint must show (1) when the fraud was discovered, which, of course, must be within the three-year period, (2) why it was not discovered sooner, and (3) the circumstances under which it was discovered, so that the courts may determine whether or not it was in truth discovered only within the three-year period. The complaint in the present case did not allege the date of discovery, and such date was within the three-year period.

As to the reason why a discovery was not sooner had, the complaint alleged the facts which constituted the fraud and which showed the fraud to be a concealed one, and also that the defendants concealed the facts from the plaintiff. *This was sufficient showing as to why there was no discovery sooner.* It in fact comes within the exact language of the Lady Washington case, which is that 'He [the pleader] must show that the acts of fraud were committed under such circumstances that he would not be presumed to have any knowledge of them —as that they were done in secret or were kept concealed.' As to the third requirement, that the circumstances of the discovery be shown, the complaint contains nothing, *and it may well be that it was defective in this respect. But the evidence makes it plain that the circumstances under which it was discovered (a revelation of the facts by Drum after an investigation had been set on foot by the then officers of the plaintiff), did not involve a knowledge of facts upon which the plaintiff could be charged with a discovery prior to the three-year statutory period. The defendants were not misled by the defect of the complaint, and the situation is, therefore, one where the pleading perhaps is technically lacking, but where there is no lack in the evidence and the opposite party was not misled. In such a situation the error, if there was one, was not prejudicial and is not ground for a reversal."* (Emphasis added.)

In this case the appellant failed to set forth facts as to why the fraud was not discovered sooner.

The action by the commissioner against Cole's was public information. There is nothing in the complaint before us to indicate that the trustors and obligors had no knowledge of the status of Cole's during the one-year period of March, 1955, to March, 1956.

We think that it was correct to sustain the demurrer to the complaints and that it was proper to render a judgment in defendants' favor under the circumstances.

The judgment in each case is affirmed.

Wood, P. J., and Lillie, J., concurred.