[Civ. No. 28678.   Second Dist., Div. Four.   Sept. 13, 1966.]

REMUS FILMS, LTD., Plaintiff and Appellant, v. WIL-
LIAM MORRIS AGENCY, INC., Defendant and Re-
spondent.

Louis C. Blau and Leroy F. Colton for Plaintiff and Appellant.

Kaplan, Livingston, Goodwin & Berkowitz and Sol Rosenthal for Defendant and Respondent.

FILES, P. J.—This is plaintiff's appeal from a judgment of dismissal entered after the court had sustained a demurrer without leave to amend. As appears from the pleadings, the action arose out of the following events:

On May 31, 1956, plaintiff entered into a written agreement with Stewart Granger, an actor, whereby he agreed to perform in a motion picture entitled "The Whole Truth." Concurrently with the execution of the agreement plaintiff loaned to Granger the sum of $50,000, which was to be repaid to plaintiff by an offset against money which plaintiff was to pay for Granger's services at the commencement of his performance. It was further agreed that if Granger failed to render services, the $50,000 would become immediately due and payable. Granger's obligation was also evidenced by a nonnegotiable note, signed by Granger, whereby he promised to pay to plaintiff the sum of $50,000 on or before February 1, 1958.

Contemporaneously with the employment agreement, defendant entered into a written guaranty agreement, whereby defendant promised plaintiff that if Granger failed to render services and failed to repay the $50,000, defendant would pay it, and the note would then be assigned to defendant.

After this agreement had been made, and before it was performed, plaintiff entered into negotiations with defendant for another contract whereby Stewart Granger and his wife Jean Simmons were to be employed for a second motion picture to be entitled "The Night Comers." No agreement for the second picture was ever reached.

Between October 14 and December 9, 1957, Granger performed his services in the picture "The Whole Truth" and was paid in full. The $50,000 was not offset, as the May 31, 1956, contract had provided, nor was it repaid in any other way. It has been plaintiff's contention in this action that defendant led it to believe that the $50,000 would be recouped out of Granger's compensation in the second picture, which was never made. This action is plaintiff's attempt to recover the money from defendant.

The original complaint filed July 12, 1961, was in three counts. Defendant filed a demurrer, upon which there was no hearing and no ruling because plaintiff elected to amend.

The first amended complaint was cast in six counts. The pleader denominated his first count "for Declaratory Relief," the second "for Breach of Contract," the third "for Breach of Accord Agreement," and the fourth, fifth and sixth "for Fraud." Attached to this complaint, as exhibits, were the contract of May 31, 1956, the note, the guaranty agreement, a cablegram from defendant to plaintiff dated September 21,

1956, and a letter from defendant to plaintiff dated October 19, 1956.

Defendant filed a demurrer to this complaint specifying 12 grounds. The first ground was "The First Amended Complaint, and each cause of action thereof, does not state facts sufficient to constitute a cause of action against this demurring defendant." Each of the other 11 grounds of demurrer referred specifically to one or more of the first three causes of action. The ruling of the court, as expressed in its minute order, was as follows:

"Demurrer sustained on the grounds stated in paragraphs 4 through 12 thereof. 15 days leave to amend."

This minute order omits any ruling whatever upon any ground of the demurrer directed against the fourth, fifth and sixth counts. Plaintiff's counsel now tells us, with good reason, that he assumed that the court was of the opinion that each of the latter three counts stated a cause of action.

Following that ruling plaintiff filed a second amended complaint, again in six counts, and incorporating the same exhibits as before. The fourth, fifth and sixth counts were repeated in the same form as their counterparts in the prior pleading. Defendant demurred, this time specifying 14 separate grounds, the first of which was that the second amended complaint and each cause of action thereof failed to state sufficient facts. Each of the other 13 grounds of demurrer referred specifically to one or more of the first three counts. The court sustained this demurrer without leave to amend "on all grounds set forth in the demurrer," and made its order dismissing the action.

The first three counts of the second amended complaint are an attempt to state a cause of action against defendant upon its alleged written contract to pay the $50,000 which plaintiff failed to recoup when it paid for Granger's services in "The Whole Truth." The key allegation is that "Defendants . . . expressly and impliedly represented in the cablegram, Exhibit 'D,' the letter, Exhibit 'E' and during all the negotiations for the motion picture, 'THE NIGHT COMERS,' that Defendant would unconditionally guarantee repayment of the $50,000.00 loan from Plaintiff to STEWART GRANGER."

█ Even assuming that the pleader meant "promised" when he used the word "represented," we find nothing in the exhibits which could be construed as evidence of such a promise. The allegation that representations were made "during all the negotiations" states when something was done, not what

was done. If plaintiff had in mind any written or oral statements by the defendant other than those in the exhibits, it failed, in three successive complaints, to say what those statements were. The pleading does not allege any agreement other than by reference to the documents which are attached to it. The three documents executed May 31, 1956 (the employment contract, the note and the guaranty agreement), make it perfectly clear that defendant promised to pay the note only if Granger failed to perform in "The Whole Truth." The complaint alleges that Granger did make the picture.

Exhibit D, the cablegram, is a proposal by defendant that plaintiff cast Granger and Jean Simmons in a second picture. There is no reference to the loan or to the guaranty.

Exhibit E, the letter, contains a proposal for modification of the May 31, 1956, contract with respect to Granger's compensation, and also sets out detailed suggestions with respect to the second picture. The letter does propose that the $50,000 loan be recouped from Granger's earnings in the second film. But there is no suggestion of any modification of the terms of defendant's guaranty.

The basic difficulty in plaintiff's attempt to state a cause of action on contract is that these communications relate to a proposed new deal, which was never consummated. The fact which colors all of the rest is that the parties were negotiating towards a contract for Granger's services in a second picture. Although such a contract, if made, might have included a new obligation of defendant with respect to the $50,000 loan, no agreement on the second picture was ever reached. After examining plaintiff's third attempt to plead a contractual cause of action, based upon writings which lent no support to the claim, the trial court could reasonably conclude that the case was hopeless. If nothing more had been involved, the order sustaining the demurrer without leave to amend would have been proper.

The fourth cause of action alleges, among other things:

(1) On September 21, 1956, defendant represented that Stewart Granger and Jean Simmons were willing and anxious to act in the picture to be entitled "The Night Comers." On September 19, 1957, defendant represented that Granger and Simmons would be available to commence services in "The Night Comers" in May of 1958. Defendant knew that the

services of Jean Simmons were indispensable to plaintiff for this picture;

(2) Defendant made these representations with intent to deceive plaintiff, and to induce plaintiff to refrain from recouping the $50,000 loan out of the picture "The Whole Truth";

(3) Defendant knew at the time that Jean Simmons would not be available as it had represented;

(4) Plaintiff relied on these representations when it refrained from offsetting the $50,000 when it paid for Granger's services in "The Whole Truth";

(5) The loan has not been repaid, and Granger has refused to pay.

These allegations are a sufficient pleading of an action for damages for deceit, at least as against a general demurrer. (*Cross* v. *Bouck*, 175 Cal. 253, 256 [165 P. 702]; see 2 Witkin, Cal. Procedure (1954) Pleading, § 348, p. 1326 et seq.)

Strictly speaking, the complaint omits direct allegation of facts from which the falsity of the representations may be concluded. (See 2 Witkin, *op. cit. supra*, at p. 1335.) But the averments that defendant knew of the falsity and intended to deceive carry the necessary implication of falsity, which will suffice as against a general demurrer. (*McKay* v. *New York Life Ins. Co.*, 124 Cal. 270, 272 [56 P. 1112].)

Defendant points out in its brief on appeal that the fraud counts are, on their face, barred by the three-year statute of limitations[1] set forth in Code of Civil Procedure section 338, subdivision 4.

Prima facie the cause of action arises when the fraud is committed, i.e., when all of the elements of the cause of action come into existence. (*Leeper* v. *Beltrami*, 53 Cal.2d 195, 208 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803]; see *Savings Bank* v. *Schell*, 142 Cal. 505, 511 [76 P. 250]; 1 Witkin, Cal. Procedure (1954) 614.)

The alleged tort consists of deceiving plaintiff so as to induce it to pay out, when Granger started to work on October 14, 1957, the sum of $50,000 which it otherwise would not have paid. The last event, by which the plaintiff sustained damage, was its act of parting with its money. Thus, from the facts

---

[1]Code Civ. Proc., § 335: "The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows: . . .

"§ 338. Within three years: . . . "4. An action for relief on the ground of fraud or mistake. The cause of action in such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

alleged, it would appear that the fraud was committed on or about October 14, 1957, which is more than three years prior to the commencement of this action on July 14, 1961. ▓▓ Although the statute provides that the cause of action is not deemed to have accrued until discovery, plaintiff may rely upon late discovery only if it pleads the lack of earlier knowledge and the circumstances of its subsequent discovery. (*Consolidated Reservoir & Power Co.* v. *Scarborough*, 216 Cal. 698 [16 P.2d 271] ; see 1 Witkin, Cal. Procedure (1954) 652.)

▓▓ In the trial court defendant did not mention the statute of limitations as a basis for its demurrer as to the fourth, fifth and sixth causes of action. ▓▓ A failure to plead the statute of limitations either in an answer or as a ground of general demurrer would constitute a waiver of the defense. (*Minton* v. *Cavaney*, 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].) ▓▓ Now that the defendant has made known its intention to raise the defense (by answer if not by demurrer), the simplest procedure is to give plaintiff an opportunity to amend its complaint to state any facts which may be available to overcome the apparent bar.

The judgment is reversed with directions to grant leave to amend the complaint.

Jefferson, J., and Kingsley, J., concurred.