[Civ. No. 31474.   Second Dist., Div. Four.   Apr. 18, 1968.]

MICHAEL H. RADER et al., Plaintiffs and Appellants, v. APPLE VALLEY BUILDING AND DEVELOPMENT COMPANY, Defendant and Respondent.

Stiles Wegener and George E. Dalton for Plaintiffs and Appellants.

Ball, Hunt, Hart & Brown and Robert A. Aitken for Defendant and Respondent.

COLLINS, J. pro tem.*—In this action plaintiffs seek rescission of a real estate purchase agreement on the ground of misrepresentation.[1] One of the defendants, Apple Valley Building and Development Company (hereafter Apple Valley) filed a general and special demurrer, both of which were sustained (by Judge Charvat) with leave to plaintiffs to file an amended complaint within 15 days. Upon their failure to do so, said defendant's motion for judgment of dismissal was granted (by Judge Raycraft). The appeal is from the judgment of dismissal.

The complaint, filed on August 26, 1965, alleged that, on July 30, 1957, plaintiffs entered into a written contract with defendant Title Insurance and Trust Company (hereafter TITCO) for the purchase of two adjacent lots in a San Bernardino County real estate development known as Apple Valley. A copy of the contract is attached as an exhibit to their complaint. The complaint alleged that TITCO and various "Doe" defendants were agents of Apple Valley at the time of the transaction; that the defendants represented that said lots could be used for the purpose of constructing thereon multiple unit apartment houses two stories in height, and that plaintiffs purchased the lots for the sole purpose of constructing thereon a 22-unit two-story multiple dwelling apartment house. The complaint further alleged that the lots were located less than 200 feet from the nearest edge of the east-

---

*Assigned by the Chairman of the Judicial Council.

[1]The complaint and appellants' brief speak of defendant's "negligent misrepresentation" but at oral argument of the appeal plaintiffs' counsel conceded that the intended charge was "mistake" on defendant's part.

west runway of the Apple Valley airport; that (apparently in September 1963) the Federal Aviation Agency (hereafter FAA) "denied" plaintiffs the right to construct an apartment house on the said property. It is further alleged that, in 1965, when negotiations for settlement failed, plaintiffs served a notice of rescission and demanded the return of $6,398 which they had theretofore paid on the contract, plus an additional $3,000 for expenses they had incurred in preparation for the development of the lots for their intended purpose. A second cause of action alleged the substance of the first cause of action and added the allegation that the lots had become valueless to plaintiffs by reason of the action of the FAA.

Paragraph VI of the first cause of action states:

"Defendants and each of them represented to plaintiffs that the said lots which were the subject of this purchase could be used by plaintiffs for the purpose of constructing thereon multiple unit apartment houses two stories in height."

Apple Valley[2] filed general and special demurrers. The general demurrers asserted that neither the first nor the second cause of action stated facts sufficient to constitute a cause of action. The special demurrer to the first cause of action asserted uncertainty, particularly with respect to the foregoing paragraph VI, on the ground that it did not allege whether representations as to the permissible use of the lots were oral or in writing, when they were made, by whom they were made, and whether the persons who allegedly made representations were authorized to do so by Apple Valley. The special demurrer further asserted that the allegations are uncertain because they do not state whether the alleged representations were made fraudulently or negligently. The same grounds of demurrer were asserted with respect to the second cause of action.

There is no allegation in the complaint as to who made the representation, when it was made or whether, at the time it was made, it was false or (to use the language of plaintiffs' brief on appeal) "incorrect."

Paragraph VII of the complaint states: ". . . Plaintiffs believed the said representation . . ."; paragraph VIII after alleging that FAA conducted a study pursuant to part 77 of subpart E of chapter I of title 14 of its Regulations, determined that plaintiffs' proposed construction "would

---

[2]The record does not disclose whether TITCO was ever served with a copy of the summons and complaint or appeared in the action. It is not a party to this appeal.

have a substantial adverse effect upon the safe and efficient utilization of navigable air space, and it thereby determined that the proposed structure would be a hazard to air navigation and denied plaintiffs the right to construct an apartment house on said property. The determination letter was issued in Washington, D.C., on September 16, 1963.''

The minute order made at the time the demurrers were sustained has not been made a part of the clerk's record on appeal so we are not apprised as to the ground, or grounds, on which the trial court rested its decision.[3] However, this is of no consequence since the complaint is so patently insufficient that the demurrer was properly urged on both the general and special grounds. The complaint was vulnerable to general demurrer because it alleges as facts matters which are contrary to law, particularly the allegation that FAA, after determining that plaintiffs' proposed construction would be a hazard to air navigation, denied them the right to undertake their desired construction.

█ We take judicial notice of Federal Aviation Regulations, title 14, chapter 1, part 77[4] which plaintiffs have impleaded, as well as of the Federal Aviation Act (49 U.S.C.A., § 1301 et seq.). (See Evid. Code, § 451, subds. (a) and (b) ; 44 U.S.C.A., §§ 305 (a) and 307.)

█ At no time has either federal law or FAA regulations invested the agency or its administrator with any authority to ''deny'' the owner of private property the right to perform construction work on his property. To do so would be an outright violation of constitutional provisions, to-wit, ''. . . nor shall private property be taken for public use, without just compensation.'' (U.S. Const., Amend. V, concluding clause.)[5] At most the Federal Aviation Act and FAA Regula-

---

[3]Code of Civil Procedure, section 472d, requires a statement of the ground or grounds upon which the decision is based; it also provides that the party adversely affected may waive the requirement.

[4]We do not concern ourselves here with the Civil Aeronautics Act of 1938 (formerly 49 U.S.C.A., § 401 et seq.) or Regulations of the Civil Aeronautics Administration, Part 625, promulgated pursuant to said Act. That Act was repealed in 1958 and superseded by the Federal Aviation Act enacted in that year (49 U.S.C.A., § 1301 et seq.) ; also in 1958 the Administrator of the newly created Federal Aviation Agency promulgated new air navigation safety regulations (including title 14, chapter 1, part 77) which has been amended from time to time since that date but not in particulars of importance here. (See 14 Code of Federal Regulations (Civil Aviation).)

[5]*United States* v. *Causby* (1946) 328 U.S. 256 [90 L.Ed. 1206, 66 S.Ct. 1062], is a case of first impression on liability for appropriation of airspace above privately owned property. (Also see *Bacon* v. *United States* (1961) 295 F.2d 936 [155 Ct. Cl. 441]; *A. J. Hodges Industries, Inc.* v. *United States* (1966) 355 F.2d 592 [174 Ct. Cl. 259].)

tions authorize FAA to conduct investigations, make aeronautical studies with resulting evaluation and determination whether contemplated construction would be a hazard to air navigation. Regulations in effect in 1963 when plaintiffs allege they were ''denied'' the right to perform desired construction work required them to give advance notice of their intention to FAA, and the studies and determination usually ensued after such notice. In cases of adverse determination, the property owner would be denied an FAA license or construction permit. The regulation afforded the property owners the right to certain administrative hearings and procedures. It is not alleged in the complaint that plaintiffs pursued these procedures or exhausted their administrative remedies.

In any case, effective and conclusive denial of right to make use of private property is a matter for judicial determination.[6] Hence the allegation in plaintiffs' complaint that in 1963 they were ''denied'' any rights in their lots is a conclusion and is contrary to law. The general demurrer that their complaint did not state a cause of action was well taken and properly sustained on that ground.

Turning attention to the special demurrer, the failure to plead when the alleged representation was made is disastrous in view of the positive allegation that FAA first advised of its denial on September 16, 1963—which was more than six years after plaintiffs had entered into the written contract of July 30, 1957, copy of which is attached to the complaint.

The complaint, as most favorably construed from plaintiffs' viewpoint, indicates that the claim of misrepresentation as of the date of the purchase transaction on July 30, 1957, is barred by the applicable three-year statute of limitations. (Code Civ. Proc., § 338, subd. 4.) The rule that failure to plead the statute of limitations either in an answer or as a ground of demurrer constitutes a waiver (*Minton* v. *Cavaney*, 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473]) has no application here because defendant was not poised to urge the statute until such time as plaintiffs would plead further and

---

[6]In 1967 the California State Aeronautics Act (Public Utilities Code, § 21001 et seq.) was amended by the Legislature (Stats. 1967) to prohibit construction work hazardous to air navigation within one mile of a public airport unless a permit allowing such construction is issued by the State Division of Aeronautics, except when the FAA has determined that such construction does not constitute such hazard. (Pub. Util. Code, § 21643.) The new law expressly reserves to a person aggrieved by the action of the State Division of Aeronautics the right to have such action reviewed by the court. (Pub. Util. Code, § 21644.)

furnish the date the alleged misrepresentation was made. It is significant that plaintiffs chose not to amend.[7] Probably the demurrer served to alert them that the incident which gave rise to their complaint did not occur on July 30, 1957, but on September 16, 1963, more than six years after their dealings with the defendant. Moreover, in their appeal brief, plaintiffs —apparently aware of the pitfall into which an unequivocal charge of fraud would lead them—disavow any intent to charge defendant with fraud. Instead they insist that they are charging only that ''defendant made an incorrect statement'' and that the inference to be drawn therefrom is that defendant ''innocently made the representation.'' Seemingly, in a desperate effort to salvage their lawsuit, plaintiffs have steered clear of Scylla by jettisoning the anchor of wilfulness and the rudder of fraud only to be engulfed in Charybdis because what remains of their floundering complaint is incapable of remaining afloat on the legalistic sea.

█ Plaintiffs' failure to identify by name, title, capacity, or position the person who allegedly made the stated representations also properly subjected the complaint to the special demurrer in view of the fact that only two defendants, both corporations, were identified in the complaint. Obviously they could act only through their human agents.

''. . . Therefore it was material to state the names of such agents and servants, what they said and did material to the cause of action which the pleader was attempting to set forth, when the event happened, and such facts and circumstances as the pleader relied upon as proof. . . .'' (*Mason* v. *Drug, Inc.*, 31 Cal.App.2d 697, 703 [88 P.2d 929] ; see *Gautier* v. *General Tel. Co.*, 234 Cal.App.2d 302, 308. [44 Cal.Rptr. 404] ; *Allen* v. *Ramsay*, 179 Cal.App.2d 843, 848 [4 Cal.Rptr. 575].)

Plaintiffs' failure to take advantage of the leave given to amend and cure this defect in itself justified the judgment of dismissal.

█ ''. . . The rule is, of course, that if general and special demurrers are sustained with leave to amend, and the plaintiff fails to take advantage of the permission to amend, the judgment thereafter entered must be affirmed if any ground of the special demurrer is good. █ On the other

---

[7] This situation distinguishes the case at bar from *Remus Films, Ltd.* v. *William Morris Agency, Inc.*, 244 Cal.App.2d 763 [53 Cal.Rptr. 526], where the demurrer to the second amended complaint was sustained without leave to amend, even though the minute order omitted any ruling on the demurrers directed to three causes of action which sounded in deceit.

hand, under the rule announced in *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713 [128 P.2d 522, 141 A.L.R. 1358]; *Washer* v. *Bank of America,* 21 Cal.2d 822 [136 P.2d 297, 155 A.L.R. 1338], and other cases, it is now the rule that if a demurrer is sustained without leave to amend, it is an abuse of discretion to deny the right to amend if the only sound basis of the order is a defect challenged by special demurrer. In such a case the judgment will be reversed even though one or more grounds of special demurrer may have been good." (*Veterans' Welfare Board* v. *City of Oakland,* 74 Cal.App.2d 818, 822 [169 P.2d 1000].)

For all of the foregoing reasons, we conclude that the general and special demurrers were properly sustained and that the judgment of dismissal was proper.

Judgment affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.