[Civ. No. 31711.   Second Dist., Div. Two.   Oct. 22, 1968.]

HILLS TRANSPORTATION COMPANY, Plaintiff and Appellant, v. SOUTHWEST FOREST INDUSTRIES, INC., Defendants and Respondents.

704

Ball, Hunt, Hart & Brown and Albert H. Ebright for Plaintiff and Appellant.

Gibson, Dunn & Crutcher and Frederic H. Sturdy for Defendants and Respondents.

FLEMING, J.—General and special demurrers to Hills Transportation Co.'s second amended complaint were sustained without leave to amend. Hills appeals the judgment of dismissal.

Hills was engaged in the business of transporting goods by truck as a common carrier. Defendant Southwest Forest Industries (Southwest) was one of three paper companies which sold newsprint to the Hearst publications in Los Angeles. Formerly, the three paper companies shipped newsprint by rail or vessel to Los Angeles, and each employed Hills to carry its newsprint by truck from rail depot or ship's dock to Hearst's facilities in Los Angeles. But in May 1964, Southwest eliminated its rail haul of newsprint by commencing to ship newsprint by truck direct from Arizona to Hearst in Los Angeles. As a consequence Hills lost the local haulage business of Southwest it had previously enjoyed.

In July 1965, Hills filed an unverified complaint for breach of contract against Southwest, and its officer, Raymond Baker; and against Hillbro Newspaper Printing Co. (Hearst), and its officer, R. Willis Meinburg. General and special demurrers to this complaint were sustained, and the same fate befell Hills' unverified first amended complaint, to which a count for fraud had been added and from which the five exhibits attached to the original complaint had been deleted.

In the second amended complaint, which was verified, only Southwest and Baker were named as defendants, and Hearst and Meinburg were dropped from the case. This complaint pleaded four counts of breach of contract and a fifth count of fraud.

The first count declared that *Southwest* and *Hearst* made a written contract on 1 September 1962 for Southwest to sell newsprint to Hearst at a price to include the cost of delivery; under this contract all newsprint would be shipped by rail to the Los Angeles depot and delivered from there to Hearst by one trucking company. On 19 October 1962, according to the pleading, *Southwest* offered *Hills* an exclusive contract to haul Southwest's newsprint by truck from the Los Angeles rail depot to Hearst's premises. Under this offer deliveries would start 2 February 1963 and continue for a reasonable time, the provisions of the Southwest-Hearst contract governing delivery of newsprint would be incorporated in the con-

tract, and rates would be adjusted every 30 days in accordance with the requirements of the California Public Utilities Commission. On 8 November 1962, Hills accepted in writing Southwest's offer of a contract. Thereafter Hills invested $200,000 in equipment to carry out its duties under the contract, but on 13 May 1964 Southwest breached its contract by commencing to deliver newsprint by truck direct from Arizona to Hearst in Los Angeles.

The second, third, and fourth counts were tied to the first, in that each pleaded the contract between Hills and Southwest and then set forth various modes and consequences of its breach. The trial court sustained general and special demurrers to the four contract counts of the second amended complaint.

■ The ruling on the special demurrers to those counts was proper, for it is readily apparent that two gaping holes exist on the face of the pleading. First, the pleading does not specify whether the contract was written or oral, an allegation whose absence has been made a specific ground of demurrer. (Code Civ. Proc., § 430, subd. 8 (formerly 430, subd. 10).) The pleading describes the contract between Southwest and Hearst as written, and it describes Hills' acceptance of Southwest's offer as written, but it does not state whether Southwest's offer to Hills was written or oral. Second, the complaint is uncertain about the duration of the contract. (Code Civ. Proc., § 430, subd. 7 (formerly 430, subd. 9).) According to the pleading the contract was tendered by Southwest on 19 October 1962, accepted by Hills on 8 November 1962, went into effect on 2 February 1963, and was breached by Southwest on 13 May 1964. The only thing said about the term of the contract is that it was to continue for a reasonable time. How long is a reasonable time—one month, two months, five months, one year, two years, five years? Having run 15 months, had it run a reasonable time? Does Hills contend that Southwest was required to continue indefinitely shipment of newsprint by rail? Could never change? Could only change on giving some particular notice? On this point it seems obvious the pleading is uncertainty rampant.

The fifth count sought damages for fraud. It charged that Southwest and Baker over the period from 22 October 1962 to 15 May 1964, falsely represented to Hills that they would enter a 5-year contract for the Los Angeles carriage of newsprint from rail depot to Hearst. Defendants made these repre-

sentations without any intent to perform and to induce Hills to invest capital in equipment to carry Southwest's newsprint. Hills relied on these representations and spent money it would not otherwise have spent, to its damage. To this count, as well, general and special demurrers were sustained by the trial court.

The ruling on the special demurrers to this count was likewise proper. The pleading charged a false promise to enter into a 5-year contract, made with intent to deceive, made without intent to perform, and justifiably relied on by plaintiff, to its damage. No specific facts were pleaded to show how, when, where, to whom, and by what means the representations were tendered, from what data the falsity of Southwest's intentions could be inferred, or how, when, where, through whom, and in what circumstances Hills became justified in relying upon these representations.

It is well established that the pleading of fraud and deceit must be specific, particularly when the pleader seeks to recover damages for a party's failure to enter a contract required by the statute of frauds to be in writing. The general rule on pleading fraud has been summarized by Mr. Witkin (2 Witkin, Cal. Procedure (1954) § 349, p. 1327): "Fraud actions have been classed as 'disfavored,' and are subject to strict requirements of particularity in pleading. The idea seems to be that allegations of fraud involve a serious attack on character, and fairness to the defendant demands that he should receive the fullest possible details of the charge in order to prepare his defense. Accordingly the rule is everywhere followed that fraud must be specifically pleaded. The effect of this rule is twofold: (a) General pleading of the legal conclusion of 'fraud' is insufficient; the facts constituting the fraud must be alleged. (2) every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings (see supra, § 209) will not ordinarily be invoked to sustain a pleading defective in any material respect. (See *Scafidi* v. *West. Loan & Bldg. Co.* (1946) 72 C.A.2d 550, 558, 165 P.2d 260 [quoting C.J.S.: 'It is essential that the facts and circumstances which constitute the fraud should be set out clearly, concisely, and with sufficient particularity to apprise the opposite party of what he is called on to answer, and to enable the court to determine whether, on the facts pleaded, there is any foundation, prima facie at least,

for the charge of fraud']; *Woodson* v. *Winchester* (1911) 16 C.A. 472, 117 P. 565; *Mason* v. *Drug, Inc.* (1939) 31 C.A.2d 697, 703, 88 P.2d 929; *Bacon* v. *Soule* (1912) 19 C.A. 428, 438, 126 P. 384; cf. Fed. Rule 9(b) ['In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity']; 1 B. & H. 541, Clark, p. 541, but cf. § 350, . . ."

A cause of action for a false promise should plead facts to show the existence of two specific intentions of the promisor: an intention to cause the promisee to act by reason of the promise, and an intention at the time of the promise not to keep it. It is not enough to aver that the promisor by his promise intended to induce the promisee to act and that the latter did act in justifiable reliance on the promise. "If the recipient wishes to obtain legal assurance that the intention honestly entertained will be carried out, he must see that it is expressed in the form of an enforceable contract." (Restatement, Torts, § 530, p. 69.) Consequently, in pleading the tort it is indispensable to set forth the falsity of the promise at the time it was tendered. (*Kett* v. *Graeser,* 241 Cal.App.2d 571, 573 [50 Cal.Rptr. 727].) In so differentiating a false promise from the great bulk of broken promises, the allegations necessary to show contemporaneous intention not to perform should be clear, specific, and unequivocal. (*Davis* v. *Rite-Lite Sales Co.,* 8 Cal.2d 675, 681 [67 P.2d 1039]; *Bank of America* v. *Vannini,* 140 Cal.App.2d 120 [295 P.2d 102].) This rule of specific pleading carries particular weight when plaintiff has attempted to plead a promise to make a contract within the statute of limitations (*Scafidi* v. *Western Loan & Bldg. Co.,* 72 Cal.App.2d 550, 558 [165 P.2d 260]) or within the statute of frauds (*Kroger* v. *Baur,* 46 Cal.App.2d 801 [117 P.2d 50]; *Beach* v. *Arblaster,* 194 Cal.App.2d 145, 163 [14 Cal.Rptr. 854]). ▮ Here, plaintiff's pleading of its cause of action for fraud was wholly deficient of any statement of fact to back up its claim of a false promise made with intent to deceive and without intent to perform, and the trial court properly sustained the special demurrers for uncertainty.

On appeal, Hills does not strenuously challenge the correctness of these rulings but instead questions the trial court's exercise of its discretion in refusing to permit further amendment of the pleading. Southwest, in support of the court's order disallowing further amendment, relies in large part on inferences drawn from Hills' own letters attached to the

original complaint as Exhibits A and E. In reply, Hills contends that Exhibits A and E were not properly before the court, arguing that since a superseded pleading no longer performs any function as a pleading, exhibits attached to such a pleading may not be considered by the court for any purpose.

Evaluation of this argument requires some discussion of the trial court's discretion in permitting further amendment of a defective pleading. ■ The basic principle governing the privilege of amendment is clear enough: amending of the pleading should be allowed if it appears likely the pleader has, and can state, a recognizable legal claim; amendment should be denied if it appears the pleader has only a moral claim or disappointed expectation, and cannot validly state a justiciable cause of action. But in application we find more of art than of science. ■ How does a court, confronted with a defective pleading of nondescript appearance and uncertain ancestry, determine whether the pleading is susceptible of future domestication into the recognizable flock of justiciable causes of action? In final analysis, the court is required to look at the existing pleading and hazard its best judgment whether behind the words of the pleading anything of legal substance lies, whether on further revision the pleading can honestly state a cause of action. In this exercise it is logical to suppose that the more information a court has the more rational will be its judgment, that hence access to prior pleadings may help the court reach a more intelligent decision, just as access to the history of any particular problem may aid its solution. Plaintiff, however, argues that the policy in favor of liberal amendment of pleadings requires a pleader not to be bound by a prior pleading, which may have inadvertently misstated facts or mistakenly interpreted the legal significance of what occurred (*Lamoreux* v. *San Diego etc. Ry. Co.*, 48 Cal.2d 617, 623 [311 P.2d 1] ; *Avalon Printing Co.* v. *Alert Lbr. Co.*, 234 Cal.App.2d 178, 184-185 [44 Cal.Rptr. 90] ), and therefore a court is required to dismiss from its thoughts any inferences about facts it may have acquired from exhibits in a superseded pleading. In effect, plaintiff would restrict the court's gaze to whatever softlit and artfully-draped tableau it has currently placed on stage in its latest pleading.

■ Yet conceding what is owed to liberality of pleading, it would seem a matter of elementary common sense to allow a court when exercising its judicial discretion to examine what-

ever factual material has legitimately become available. Since a court may take judicial notice of all pleadings in a particular case, exhibits incorporated in earlier pleadings are readily accessible. (Evid. Code, § 452.) If this material is also pertinent, and in the instance of plaintiff's own letters pleaded by him we think it is, it would appear helpful to the court to take advantage of whatever light on the problem the material provides. This is not an instance where one good must be sacrificed at the altar of another good. The gain to the court in the dispensation of justice is obvious, and this gain is not offset by any comparable loss to the pleader, for the only thing the latter loses is an unlimited license to indulge in fiction.

Under the logic of this argument plaintiff yields some ground, but takes its stand on a distinction between verified and unverified pleadings. While conceding that in certain circumstances earlier verified pleadings may be considered by the court in passing on the bona fides of a later pleading, plaintiff insists that unverified pleadings are superseded in all respects by a subsequent pleading and hence must be viewed by the court as though having never been. Plaintiff cites a number of cases to support its argument that only verified pleadings may be considered by the court in a subsequent stage of the case. Some of these cases deal with the use of pleadings as admissions, as evidence, or as substantive proof of facts. (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 384-385 [267 P.2d 257].) Obviously, the issue in such cases is somewhat different from that now before us, viz., whether a court may take a superseded pleading into account in exercising its discretion with respect to further pleading. Other cases cited by plaintiff have stated the rule in terms of a prior verified pleading but have not discussed the significance of a lack of verification and have not declared that an unverified pleading must be ignored. (*Williamson* v. *Joyce,* 137 Cal. 151 [69 P. 980]; *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358]; *Owens* v. *Traverso,* 125 Cal.App.2d 803, 808 [271 P.2d 164]; *Slavin* v. *City of Glendale,* 97 Cal.App.2d 407, 411 [217 P.2d 984]; *Neal* v. *Bank of America,* 93 Cal.App.2d 678, 682 [209 P.2d 825].) But a respectable number of cases have applied the rule to prior pleadings in general without drawing any distinction between verified and unverified pleadings. In these latter cases the pleadings appear to have been unverified, at

least so far as we can tell from the opinion. (*Tognazzi* v. *Wilhelm,* 6 Cal.2d 123, 127 [56 P.2d 1227] ; *Terry* v. *Bender,* 143 Cal.App.2d 198, 205 [300 P.2d 119] ; *McDonald* v. *California,* 130 Cal.App.2d 793 [279 P.2d 777] ; *Zakaessian* v. *Zakaessian,* 70 Cal.App.2d 721, 724 [161 P.2d 677] ; *Johnson* v. *Nolan,* 105 Cal.App. 293 [288 P. 78].) We think the better formulation of the rule draws no artificial distinction between verified and unverified pleadings but permits the trial court in either case to function without blinkers and take note when pertinent of the entire history of the pleadings. We conclude that in the case at bench the trial court could properly consider Exhibits A and E of the original complaint.

Exhibit A, a letter from Hills addressed to Southwest, Crown Zellerbach, and Powell River-Alberni Sales, dated 8 November 1962, reads in part:

"After two weeks of extensive survey, we would like to confirm our verbal agreement with and commitments to you relative to the transportation of newsprint paper from Long Beach Harbor to Los Angeles, as well as from Los Angeles railhead to destination in Los Angeles. . . .

"As common carriers, we cannot negotiate a contract for the Harbor service. However, from our discussions with all of you it is our understanding that we can anticipate a continuance of this business for a period of at least five years or more. . . . With respect to the local haul from Los Angeles railhead to Los Angeles destination . . . We feel confident that we can secure the necessary authority from the Public Utilities Commission to assess and charge a rate lower than the minimum rate . . . In order to present such a case, we would have to actually transport the traffic at the existing minimum rate for a period of approximately 60 days. . . . *At that time we would contemplate contracting with you* for all of the railhead traffic for a period of five or more years. . . . We anticipate a long-range service to all concerned and, provided we conform to the requirements of all, we should enjoy your business for many, many years." (Italics ours.)

Exhibit E, a letter from Hills to Southwest, dated 9 July 1963, reads in part:

"*I am furnishing you both of these* [documents] *in order that you may prepare a contract suitable to you.*" (Italics ours.) The letter goes on to outline certain changes in the terminology of what appears to be a draft contract proposal and then continues : "The concluding paragraph will have to

be amended to make the entire contract legally applicable, inasmuch as *this type of agreement can not be in excess of thirty days. . . .*

"As discussed with you on our last occasion, *I am willing to try this for a period of a few months and to then see what the results are.* If at that time it is not attractive, you and I have agreed we will sit down and discuss it. . . .

"*Please submit a contract to your liking,* patterned after the Bundren contract [one of the enclosed documents] and we will immediately sign it and put it into effect at whatever date is to your convenience. I know you have wanted this relief for some time, so we await your reply." (Italics ours.)

In considering whether Hills should have been allowed to further amend its counts for breach of contract, the trial court could have inferred from Exhibit A the probability that the parties had no written contract on 8 November 1962. From Exhibit E the trial court could have inferred the probability the parties had no contract, written or otherwise, up to 9 July 1963, and on that date were still discussing terms for a possible contract.

The trial court also could have weighed the implications of plaintiff's failure to produce other writings to support its claim of a written contract after the writings it originally produced had been ruled insufficient. When a pleading declares that specific writings constitute the written contract between the parties and a subsequent pleading then eliminates all reference to these specific writings but continues to plead the existence of a written contract, it is a legitimate inference that the pleader is attempting to maintain his claim of a written contract with writings which are inadequate for his purpose. Here plaintiff's original complaint in substance declared: "By these letters plaintiff and defendant made a written agreement for a period of at least five years."

The second amended complaint in effect made the following deletions: "~~By these letters~~ plaintiff and defendant made a written agreement for a period of ~~at least five years~~ [a reasonable time]." If in fact Hills had executed a written contract with Southwest, we think Hills should have produced the writing, or at least described it, instead of merely deleting material in its earlier complaint which cast doubt on its claim. The unexplained omission of written material initially relied on to state a contract undermined the credibility of Hills' claim. (*Tognazzi* v. *Wilhelm, supra,* at p. 127; *Neal* v. *Bank*

*of America, supra.*) ▮ A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective. (*Slavin* v. *City of Glendale,* 97 Cal.App.2d 407, 410 [217 P.2d 984].) ▮ As this court said in *Avalon Printing Co.* v. *Alert Lbr. Co.,* 234 Cal.App.2d 178, 184 [44 Cal.Rptr. 90] : "A litigant should not be allowed to abuse the privilege of amendment. If the amended pleading is only a sham, and it is apparent that no cause of action can truthfully be stated, the court should disregard that pleading."

▮ Finally, the trial court could have concluded that plaintiff's own pleading of a contract in its second amended complaint, even construed most favorably to it, set forth nothing more than an agreement terminable at will on reasonable notice. (*Zimco Restaurants* v. *Bartenders etc. Union,* 165 Cal. App.2d 235, 240 [331 P.2d 789].) We think the trial court was fully justified in inferring that the parties never entered a written contract for any fixed duration and in denying plaintiff further leave to plead such a contract. (*Remus Films Ltd.* v. *William Morris Agency, Inc.,* 244 Cal.App.2d 763, 767 [53 Cal.Rptr. 526].)

▮ Did the trial court abuse its discretion in refusing plaintiff further leave to amend its cause of action for fraud? Here again the trial court was undoubtedly influenced by the text of plaintiff's letter, Exhibit E, which suggests that up to July 1963, defendants had made no promise of a five-year contract and which suggests that plaintiff had not relied on the existence of such a promise in undertaking and continuing to handle the business. Rather Exhibit E indicates that the parties were discussing an agreement "for a period of a few months [to] see what the results are."

In addition to inferences derived from Exhibit E the trial court could consider the fact that after demurrers for uncertainty had been sustained to the fraud count in the first amended complaint, plaintiff repleaded the identical count in the second amended complaint without attempting to meet the specific objections for uncertainty previously upheld by the trial court. On the happening of such an event the court is entitled to infer that the pleader has no additional allegations with which to make its claim certain and has already pleaded its case to best advantage. (*Taliaferro* v. *Prettner,* 135 Cal. App.2d 157, 160 [286 P.2d 977] ; *Neal* v. *Bank of America,* 93 Cal.App.2d 678 [209 P.2d 825].) We think the trial court

justifiably concluded that plaintiff had nothing further to back up its claim of fraud and properly denied further leave to amend. (*Kroger* v. *Baur,* 46 Cal.App.2d 801 [117 P.2d 50].)

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied November 19, 1968, and appellant's petition for a hearing by the Supreme Court was denied December 18, 1968.